|136 563|
|165 152|

The Chicago, Burlington and Quincy Railroad Company

*v.*

The City of Quincy.

*Filed at Springfield March 30, 1891.*

1.  Special taxation—*for paving a street—of the ordinance—whether sufficiently certain.*  In a proceeding for the confirmation of the assessment roll of a special tax upon contiguous property for the paving of a street, where the proof shows that the street ordered to be paved by special taxation is sixty-six feet wide, including the sidewalks of fifteen feet on each side, an ordinance requiring the street to be paved thirty-six feet wide will not be invalid for uncertainty as to the part of the street to which it applies.  The thirty-six feet will include all of the street lying between the sidewalks.

2.  Same—*what is contiguous property—so as to be subject to special taxation for street improvements.*  Where a street is required to be improved between the sidewalks on either side, land or lots extending up to the sidewalk will be subject to special taxation to defray the expenses of the improvement, as property contiguous to such street, the sidewalks, for this purpose, being a part of the street, though not ordered to be improved.

3.  Use of streets—*for railroad purposes—powers of municipality—reserved power as to control over streets.*  The city of Quincy, under its charter and without any other legislative act, has no power to give consent, or make any contract or adopt any ordinance conferring upon a railroad company the use of its streets, if such consent, contract or ordinance would be to relinquish its own control over such street, or to abandon its duty to keep the same in repair.

4. A city does not lose or surrender its power to pave or otherwise improve one of its streets, by allowing a railway company, by tacit consent or by ordinance, to lay down one or more tracks, and to use such tracks for a series of years, in running cars, etc., over the same.

5. The power and duty of a city to keep all its streets in a reasonably safe condition for the use of the public are continuing, unless the contrary be indicated by legislative enactment; and the city authorities are made the exclusive judges of the propriety and necessity of exercising such power.

6. The right given to a railway company by a city council to lay down and use tracks in one of its streets, is subject to the right of the general public to also use such street. The privilege thus conferred is not exclusive, but must be exercised in common with the general public. The city may still improve and control such street, and adopt all needful rules and regulations for its management and use, and it can not alien or otherwise dispose of the same.

7. The fact that a railway company has for several years been using a part of a public street for railroad purposes, under the permission or grant of the city council, will not deprive the latter of its control over such street or relieve it of its duty to the public; and such city council may require such street to be paved whenever it may be deemed proper, notwithstanding such improvement may temporarily interfere with the business of the railroad company.

Appeal from the County Court of Adams county; the Hon. B. F. Berrian, Judge, presiding.

Mr. J. F. Carrott, and Mr. O. F. Price, for the appellant:

The ordinance fails to state or show in what part of Front street the thirty-six feet in width ordered to be paved, lies, and is therefore void. *Sterling* v. *Galt*, 117 Ill. 20.

The ordinance must specify, in itself, the nature, character, locality and description of the improvement. *Foss* v. *Chicago*, 56 Ill. 354; *Andrews* v. *Chicago*, 57 id. 239; *Railroad Co.* v. *Chicago*, 56 id. 454; *Lake* v. *Decatur*, 91 id. 600; *Railway Co.* v. *Jacksonville*, 114 id. 562.

The ordinance violates the rights and privileges granted by the city to the Northern Cross Railroad Company, to which appellant has succeeded.

Mr. W. G. Feigenspan, City Attorney, and Mr. J. Sibley, for the appellee:

As no reasons are assigned against the validity of the ordinance, it may be presumed that none exist. This court has often sustained similar ordinances. *Enos* v. *Springfield,* 113 Ill. 65; *Galesburg* v. *Searles,* 114 id. 217; *Watson* v. *Chicago,* 115 id. 78; *Springfield* v. *Green,* 120 id. 269; *Railway Co.* v. *Jacksonville,* 114 id. 563; *Wilbur* v. *Springfield,* 123 id. 395; *Springfield* v. *Mathus,* 124 id. 88; *Adams County* v. *Quincy,* 130 id. 566.

The third objection is founded upon a mistake of fact, as the testimony of the city engineer was, that the thirty-six feet mentioned in the ordinance to be improved, constituted the whole of that portion of the street between the sidewalks on each side, which were fifteen feet in width, and the entire street was sixty-six feet wide.

The fourth objection, that the real estate belonging to objector, and described in the assessment roll, is not contiguous to the improvement contemplated in the ordinance, is groundless, for want of any proof to sustain it.

The second, fifth and sixth objections are based upon the assumption that the city has no power to make the improvement, since it interferes with and takes away objector's rights. The railroad company has, at most, but an easement in the street. The charter of the city confers ample power upon the city to order the improvement. Private Laws of 1857, p. 164; 2 Redfield on Railways, p. 373, sec. 7; *State* v. *Railroad Co.* 27. Vt. 103; *Commonwealth* v. *Railroad Co.* 4 Gray, 22; Dillon on Mun. Corp. (1st ed.) 539; *Town of Ottawa* v. *Walker,* 21 Ill. 605; *Updike* v. *Wright,* 81 id. 49; *Murphy* v. *Chicago,* 29 id. 279; *Chicago* v. *Rumsey,* 87 id. 348; *McCartney* v. *Railroad Co.* 112 id. 635; *Quincy* v. *Jones,* 76 id. 231; *Murphy* v. *Peoria,* 119 id. 509; *Joliet* v. *Conway,* id. 489; 3 Zabr. 360.

The city having the power to control its streets, would be liable for any accident that might occur from a neglect to keep

them in repair. *Watson* v. *Tripp*, 11 R. I. 98; *Wellard* v. *Newbury*, 22 Vt. 558; *Venal* v. *Dorchester*, 7 Gray, 421; *Curren* v. *Lowell*, 16 Pick. 170; *Proprietors of Locks* v. *Railway Co.* 109 Mass. 22; *Browning* v. *Springfield*, 17 Ill. 143; *Joliet* v. *Verley*, 35 id. 58; *Champaign* v. *Patterson*, 50 id. 61; *Springfield* v. *LeClaire*, 49 id. 476; *Chicago* v. *Johnson*, 53 id. 91; *Mechanicsburg* v. *Meredith*, 54 id. 84; *Peru* v. *French*, 55 id. 317; *Aurora* v. *Pulfer*, 56 id. 270; *Centralia* v. *Scott*, 59 id. 129; *Sterling* v. *Thomas*, 60 id. 264; *Galesburg* v. *Higley*, 61 id. 287; *Chicago* v. *Douglass*, 66 id. 361; *Pekin* v. *Winkel*, 77 id. 56; *Marsellas* v. *Nowland*, 124 Iowa, 547; *Chicago* v. *Dalle*, 115 Ill. 388; *Mansfield* v. *Moore*, 124 id. 133; *Chicago* v. *Keefe*, 114 id. 222; *Mayor* v. *Cooley*, 55 Ga. 17; *Shurtle* v. *Minneapolis*, 17 Minn. 308; *Bloomington* v. *Bay*, 42 Ill. 503.

Mr. Justice Magruder delivered the opinion of the Court:

On June 19, 1889, the city council of the City of Quincy adopted an ordinance for the paving of Front Street between Broadway and Hampshire Streets, providing therein that the cost should be paid by special taxation upon the real estate contiguous to the improvement. The commissioners named in the ordinance made an estimate of the cost; their report of such estimate was approved by the city council; an order was entered by the council directing the city attorney to file a petition in the county court for the assessment of the cost of the improvement in accordance with Article IX of the "Act to provide for the incorporation of cities and villages;" on December 27, 1889, the City by its attorney filed its petition in the County Court of Adams County for the levying and assessing of the special tax for the cost of the improvement provided for in the ordinance; the county court appointed commissioners to assess and levy a special tax upon the real estate contiguous to and abutting upon the portion of Front street above mentioned; the commissioners filed their report or assessment

roll, to which the appellant company, as owner of 650 feet of ground west of Front street and assessed for $3490.50, filed objections; these objections were overruled and the assessment roll was confirmed. From such judgment of the County Court confirming the report of the commissioners this appeal is prosecuted.

The appellant filed six objections of which the first, third and fourth may be considered together. The first is, that the ordinance is illegal, invalid and void. The third is, that the ordinance, which provides for the paving of the portion of Front street above mentioned to the width of thirty six feet, fails to show in what part of the street the thirty six feet in width lie. The fourth is, that the ground belonging to appellant is not contiguous to the improvement named in the ordinance, and, therefore, cannot be specially taxed for the improvement.

Counsel have not pointed out to us how or wherein the ordinance is illegal and void. It specifies the nature, character, locality and description of the improvement in accordance with the requirement of the statute as interpreted by this court. (*City of Sterling* v. *Galt*, 117 Ill. 11). It may be, however, that the third objection was intended to specify more particularly the invalidity charged in the first. It appears from the evidence that Front street between Broadway and Hampshire streets, which intersect it, is 66 feet wide, including the sidewalks. It also appears that the municipal Code of 1885 of the City of Quincy (sec. 709, page 220) requires all sidewalks, which may be ordered by the city council, to be constructed under the superintendence of the city engineer and to be of the width of twelve feet, "unless where they have already been established or may hereafter be ordered some other width by the city council," etc. Appellant's point seems to be, that, as the street is sixty six feet wide and the code requires the sidewalks to be twelve feet wide, after taking out of the 66 feet 24 feet for the sidewalks on both sides, there

would be 42 feet left, and, as the ordinance requires the street
to be paved to the width of only thirty six feet, six feet are
unprovided for, and it cannot be determined in what part of
the 42 feet the 36 feet lie.    It is, therefore, argued that the
ordinance does not specify the locality and description of the
improvement; and the contention that appellant's land is not
contiguous to the improvement must be based upon the sup-
position that some part of the six feet is between said land
and the 36 feet, as counsel do not otherwise explain their fourth
objection.

The proof shows that the sidewalks on the east and west
sides of Front street between Broadway and Hampshire streets
are 15 feet wide.    E. R. Chatten testifies, that he is and has
been city engineer of the city of Quincy for 20 years and has
known Front street during that time and before; that the
width of the street—66 feet—includes 30 feet for sidewalks,
15 feet on each side; that there has been a sidewalk 15 feet
wide on the east side of the street for 25 years; that, on the
west side, the side walk consists of the platform of the depot
which is 15 feet wide; that the space between the sidewalks,
which is used as a street, is 36 feet wide.    This testimony is
not contradicted, and, in view of it, the ordinance must be
regarded as specifying distinctly and definitely where the 36
feet to be paved are located.    The portion of the street to be
paved is that which lies between the sidewalks as they exist.
The ordinance itself provides, that curbstones shall be set on
each side of the street "at the outer line of the respective side-
walks."    Section 709 of the code of 1885 refers to sidewalks
which may be thereafter ordered by the city council, and ex-
pressly excepts those which, like the sidewalks on the portion
of Front street here described, "have already been established."

The objection that the land of appellant is not contiguous
to the improvement is as untenable as the objection that the
ordinance does not show the location of the 36 feet to be paved.
Appellant's land lies along side of the west line of the sidewalk

on the west side of the street. It is as contiguous to the street when the sidewalk is 15 feet wide as it would be if the sidewalk was 12 feet wide. If land is not contiguous to the paved portion of a street, because it is separated therefrom by a sidewalk, then no street with sidewalks could ever be improved by special taxation of contiguous property.

The second objection is, that the ordinance is void because it violates the rights and privileges granted by the appellee to the Northern Cross R. R. Co., to which appellant claims to be the successor, by virtue of a deed executed by appellee to the said Northern Cross R. R. Co. on July 25, 1855. The portion of the deed in question, which is material to the point here made, is set forth in *City of Quincy* v. *C., B. & Q. R. R. Co.* 94 Ill. 537. As will be seen by reference to said case, the City of Quincy granted to the Northern Cross R. R. Co. the "privilege of making and using two railroad tracks in and along that portion of Front street which extends from the north line of Broadway south, etc., * * * *said right and privilege to be enjoyed and exercised until the 16th day of October, 1877*," etc. The right or privilege thus granted is the only right or privilege conveyed by said deed to which our attention has been directed, and, as said right or privilege could only be enjoyed and exercised until October 16, 1877, and has long since ceased to exist by lapse of time, it is difficult to see how the ordinance violates any rights acquired under and by virtue of said deed. The second objection is, therefore, without force.

The fifth objection is, that appellant has, "with the consent and permission of" appellee, maintained one or more tracks in the portion of Front street above named "for many years last past" in connection with its business and in the passage of cars and locomotives over the same, and that said tracks are still in use by the company, and are necessary in the operation of its railroad, and that the paving of the street as provided for in the ordinance will prevent the company from

using the street where its tracks are laid, and that, therefore, the ordinance is illegal, invalid and void.

The sixth objection is that, by an ordinance passed on June 25, 1873, by the city council of Quincy, the Toledo, Wabash and Western Railway was authorized to lay down and use a track over Front street, and to extend the same so as to connect with any other railroad within the city, and to agree with any other railroad company for the joint use of the same, and that, under said ordinance of 1873, the track, now on the west side of the part of Front street which it is proposed to pave, was constructed many years ago, and, "by mutual agreement between said two railroad companies," has, for many years last past, been used jointly by them in running their locomotives and cars, and that the pavement about to be laid down will impair the rights granted by the ordinance of 1873, and render it impracticable for appellant to use said track and run its locomotives and cars over the same, and that, therefore, the ordinance of June, 1889, is void.

These objections announce the extraordinary doctrine, that a city loses or surrenders its power to pave or otherwise improve one of its streets if, by tacit consent, or by permission expressed in an ordinance, it has suffered a railroad company to lay down a track in such street, and to use such track for a number of years in running cars and locomotives over it. Such a doctrine is not sustained by reason or authority. The charter of the city of Quincy, as consolidated and amended in 1857, confers the power upon the city council "to lay out, open, alter, abolish, widen, extend, establish, grade, pave, improve and keep in repair streets, lanes, avenues and alleys." (Private Laws of 1857, page 164, sec. 13). The City has also adopted article IX of the general Incorporation Act in regard to Cities and Villages passed in 1872. Under the authority conferred by the charter, it was the duty of the city to keep all the streets within the corporate limits in a reasonably safe condition for the use of the public. (*Village of Marseilles* v. *Howland*, 124

Ill. 547). The power to improve the streets, like other legislative powers, is a continuing one unless the contrary be indicated. (2 Dillon on Mun. Corp.—3d ed.—sec. 686 (543)). The municipal authorities of the city are the exclusive judges of the propriety and necessity of exercising this power. (*Dunham* v. *Hyde Park*, 75 Ill. 371).

Under its charter, and without any other legislative act, the city of Quincy had no power to grant any consent, or make any contract, or adopt any ordinance, conferring upon a railroad company the use of one of its streets, if the effect of such consent, contract or ordinance would be to relinquish its own control over such street or to abandon its duty to keep the same in repair. In the ordinance of 1873, upon which appellant relies, the city council evinced its intention to retain the control of the street by the provisions therein inserted, regulating the speed of trains, and prohibiting the standing of cars, locomotives, etc., upon the tracks, or at the street crossings, "in such manner as to hinder, impede, or interfere with free travel along, over or across said street, or any part thereof." The right given to a railroad company by the council of a city to lay down and use a track in one of the streets is subject to the right of the general public to also use such street. The privilege of the company as thus conferred is not exclusive, but must be exercised in common with the general public. The streets are held in trust for the public use, and are public for all purposes of free and unobstructed passage. (2 Dillon on Mun. Corp.—3d ed.—sec. 683 (541)). "For those purposes the city may improve and control them, and adopt all needful rules and regulations for their management and use, but can not alien, or otherwise dispose of them." (*City of Quincy* v. *Jones*, 76 Ill. 231; *Kreigh* v. *City of Chicago*, 86 id. 407; *City of Bloomington* v. *Bay*, 42 id. 503; *Watson* v. *Tripp*, 11 R. I. 98.)

Inasmuch, therefore, as the city of Quincy still retained control over Front street, and continued to be under obligations to keep it in repair after permission was granted to the railroad

company to lay its tracks, the city council had the right to take measures for paving the street notwithstanding the fact that the railroad had its tracks there and was using such tracks from day to day. It may be true that appellant's business will suffer serious interruption from the paving of the street, but the inconvenience, to which appellant may be temporarily subjected, can make no difference in the right and duty of the city to make such improvement of the street as it deems necessary. It frequently happens that the business of the individual citizen is injured and interfered with by the construction of a street improvement, but no greater obligation rests upon him, than upon the railroad company, to submit gracefully to such annoyance. On such occasions, the owners of railways, like other parties desirous of using the street, must endure a temporary inconvenience for the sake of a permanent advantage. (*Middlesex Railroad Co.* v. *Wakefield,* 103 Mass. 261).

Upon the trial below, the railroad Company placed upon the witness stand James H. Linsey, its road-master, who swore that it would not be practicable to maintain and operate a railroad on Front Street between Broadway and Hampshire streets, if the street should be paved in the manner contemplated by the ordinance. Whether such testimony was competent and material or not, it was successfully contradicted by the evidence upon the subject introduced by the City. John R. Nevins, a civil engineer and Superintendent of Public Works in Quincy, Thomas Redmond Secretary of the Board of Public Works, and E. K. Stone, superintendent of the Quincy Horse Railway and Carrying Company, all testified that the street with the railroad tracks upon it could be paved in the manner specified in the ordinance, and that, after it should be so paved, cars and engines could be run upon the tracks and the railroad could be operated thereon.

The judgment of the County Court is affirmed.

*Judgment affirmed.*

Mr. Justice Bailey: I concur in the judgment of affirmance but dissent from much of the reasoning of the foregoing opinion of Mr. Justice Magruder.

Mr. Justice Shope: I also concur in affirmance of the judgment, but can not consent to the reasoning by which that result is reached in the opinion.

Mr. Justice Craig: I do not concur in what is said in the opinion.