## CITY OF PHILADELPHIA v. WESTERN UNION TEL. CO.

(Circuit Court, E. D. Pennsylvania. May 18, 1897.)

1. MUNICIPAL CORPORATIONS—TAXATION OF TELEGRAPH COMPANY—UNREASONABLE FEES.

In an action by the city of Philadelphia to recover certain charges imposed by two municipal ordinances for the supervision and control of telegraph poles and wires, one of which ordinances imposed a charge of $1 per annum for each telegraph pole maintained within the city limits, and the other of which required, in addition to this pole charge, the annual payment of $2.50 per mile on all wires suspended above ground, it was testified, and uncontradicted, that the total cost to the city of inspecting and supervising the poles and wires by the department having charge thereof did not exceed 50 cents per pole. *Held*, that the ordinances were unreasonable and void. City of Philadelphia v. W. U. Tel. Co., 40 Fed. 615, followed.

2. SAME.

The fact that various departments of the municipality besides the electrical bureau, which has direct charge of the work of supervising and inspecting the telegraph poles and wires, incidentally aid in this work, does not render the supervision and control of the telegraph poles and wires accountable for the expense of maintaining such municipal departments, where it does not appear what proportion or part of this expense is chargeable directly to such supervision.

John L. Kinsey and E. Spencer Miller, for plaintiff.
Read & Pettit, for defendant.

DALLAS, Circuit Judge. This is an action for the recovery of certain charges imposed by two ordinances of the plaintiff, which the defendant contends are invalid. Upon the trial the counsel of both parties united in suggesting that the case was for decision by the court, but each of them claimed that a verdict should be directed for his client. Thereupon the jury was instructed to find for the defendant, and, a verdict having been rendered accordingly, the plaintiff now moves for a new trial.

One of these ordinances imposed a charge of $1 per annum for each telegraph pole maintained in the city of Philadelphia by any telegraph company, including the defendant; and the other required, in addition to this pole charge, the annual payment of $2.50 per mile on all wires suspended above ground. The defendant conceded that,

if the amount of these charges was not unreasonably in excess of the amount needful to defray the expense to which the municipality was subjected for inspection and regulation of the appliances of the telegraph companies, the ordinances should be sustained; and to this question of reasonableness the evidence was directed. A witness, whose qualification as an expert plainly appeared and was not questioned, testified, without objection, that a liberal estimate of all the cost to the city of issuing permits, inspecting, and exercising supervision would not exceed 50 cents per pole, and that such a charge would, of itself, meet the expense of all that was actually done by the city; and hence it was argued that, to the extent of one-half of the pole charge and the whole of the charge per mile per wire, the sum imposed was excessive. The same witness presented the matter, also, in a more specific manner, by making a comparison which is very striking and cogent. He stated that for maintenance of their poles and wires, including repairs and new material when required, as well as office work, the defendant company has, for a number of years, expended only from \$2.60 to \$2.90 per mile per annum, whereas the charges imposed by these ordinances amount to about \$4.35 per mile per annum; and it is impossible to regard a charge of \$1.45 per mile more for inspection, etc., than is needed for maintenance and repair as being reasonable. The witness, to a part of whose testimony reference has been made, is, it is true, in the employment of the defendant, but his veracity was not assailed, and he was not contradicted.

The plaintiff called the chief of its electrical bureau, but he was not asked to gainsay the estimate which has been mentioned, and he did not do so, nor does his evidence appear to conflict with it. But the estimate of defendant's witness took into account only the expenses incurred by the city's electrical bureau, and the plaintiff insists that it is therefore delusive, because, as it claims, additional duties and labors were devolved, not only on that particular bureau, but also upon its councils, and upon its police and fire departments, by reason of the presence and use of the plants of the telegraph companies. Accordingly, the plaintiff offered to prove the expense involved in the transaction of the entire business of councils; but, upon its being stated that it was not proposed to show what proportion or part of this expense was chargeable to business relating to telegraph companies, the offer was rejected, on the ground that the single fact proposed to be proved was, as respects the precise issue, too vague, indefinite, and uncertain to be of any practical materiality. There was evidence that the police were directed to report, with other entirely distinct things, "leaning telegraph poles, and detached, broken, or sagging wires," and that the firemen, in extinguishing fires, were compelled to do some additional work when they encountered electric wires; but there was no attempt to show to what extent the labors of either of these departments was augmented, or how much, if at all, the expenses of maintaining them was increased in consequence, and an assumption that to provide for any such increase a charge of 25 cents per pole would be requisite could rest only upon a most extreme conjecture. There can be no doubt that it is through its electrical bureau that the city's right of inspection and regulation is mainly—almost exclusively—exercised.

Upon the facts disclosed on the trial, it then seemed to me, as it still does, that, although the city should be fairly and even liberally treated, the ordinances in question could not be upheld. There is nothing to distinguish this case from the one between the same parties which was decided by this court in 1889, and which is reported in 40 Fed. 615. That decision was based upon the fact that a charge had been imposed for five times the amount required. Here, we have a pole charge which to the extent of at least one-fourth of its amount is plainly excessive; and there is required, in addition, the payment of $2.50 per mile of wire, for which there is no legitimate need whatever, and the sum of the charges imposed is very considerably greater than the cost of actual maintenance. Therefore, I think that unreasonableness is as clearly apparent in this case as it was in that to which I have referred; and I remain of the opinion that the judgment in the latter was properly applied and followed upon this trial. The motion for a new trial is denied.