CITY OF RICHMOND v. SOUTHERN BELL TEL. & TEL. CO.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1898.)

No. 241.

1. TELEGRAPH COMPANY—SCOPE OF TERM.
    The act of July 24, 1866 (Rev. St. §§ 5263, 5268), authorizing telegraph companies to construct, maintain, and operate their lines over and along post roads of the United States, but so as not to interfere with ordinary travel thereon, applies equally to telephone companies.
    Brawley, District Judge, not assenting in full.

2. TELEPHONE COMPANY—FEDERAL STATUTE—LOCAL ORDINANCE.
    A telephone company operating its lines in and through several states, and in particular over the streets of a city, under the authority of a city ordinance which, by its terms, was revocable by the city, duly complied with the requirements of Rev. St. §§ 5263, 5268, and thereby acquired the rights granted thereby. Thereafter the local ordinance was revoked. *Held*, that

its previous acceptance of the terms of the ordinance did not debar it from claiming the full rights conferred by the act of congress.

**3. SAME—POLICE POWER.**
The privileges conferred by the act of July 24, 1866 (Rev. St. § 5263), upon telegraph and telephone companies, are to be enjoyed in subordination to the due exercise of the police power of the state where they operate their lines.

**4. SAME—UNREASONABLE ORDINANCES.**
The principle that the legislature may not, under the guise of protecting public interests, arbitrarily interfere with private business, or impose unusual or unnecessary restrictions upon lawful occupations, a fortiori applies to a municipal corporation, the creature of the legislature.

**5. SAME.**
Where the conditions, regulations, and restrictions imposed by a city council upon the maintenance and operation within the city of the lines of a telephone company enjoying the privileges conferred by Rev. St. § 5263, are such as to evince a desire to oppress and control, and perhaps defeat, the company's existence, they cannot be supported as a lawful exercise of the police power.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

Charles V. Meredith, for appellant.

Hill Carter and A. L. Holladay (Geo. H. Fearons, on the briefs), for appellee.

Before SIMONTON, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the decree of the circuit court of the United States for the Eastern district of Virginia. The complainant is a corporation organized under the laws of the state of New York as a telephone and telegraph company. It is engaged in the business of a telephone company, and of constructing and operating telephone lines in and through the states of Virginia, West Virginia, North Carolina, South Carolina, Georgia, Alabama, and Florida. It has maintained and operated for several years all the apparatus necessary for transmitting telephone messages in the city of Richmond, Va., and has erected and maintained along certain streets and alleys of said city numerous poles and wires for this purpose. The complainant company was incorporated on the 11th December, 1879. In 1884 it applied to the city of Richmond for authority to erect its poles and run its wires along the streets and alleys of said city; and by an ordinance passed 21st June, 1884, this permission was granted as to such routes as may be specified and agreed on by a resolution or resolutions of the committee on streets, from time to time, and on the conditions and provisions of the ordinance. These conditions and provisions were: That on any route conceded by the committee on streets, and accepted by the company, the poles should be so placed by the company under the direction of the city engineer as to allow for the use of said poles by the fire alarm and police telegraph, in all cases giving the choice of position to the city's wires. To furnish telephone service to the city at a special reduction of $10 per year for each station. No shade trees to be disturbed, cut, or damaged without the permission of the city engineer and the consent of the owners of the property in

front of which the trees stand.    All this work to be in every respect subject to the supervision and control of the city engineer.    The ordinance to be subject at any time to repeal, such repeal to go into effect 12 months after the passage of the repealing ordinance.    On the 13th February, 1889, the Southern Bell Telephone & Telegraph Company, the complainant, accepted without reservation all of the restrictions and obligations of the act of congress, approved 24th July, 1866, entitled "An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes."    And thereupon, on 18th February, 1889, the postmaster general certified that this acceptance was on file in the post-office department.    This act of congress is in these words:

"Sec. 5263. Any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States, which have been, or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads."

"Sec. 5268. Before any telegraph company shall exercise any of the powers or privileges conferred by law such company shall file their written acceptance with the postmaster general of the restrictions and obligations required by law."

On 14th December, 1894, the city council of Richmond repealed the ordinance of 26th June, 1884, granting these privileges to the Southern Bell Telephone & Telegraph Company, to take effect 12 months after its approval.    And 10th September, 1895, the same city council passed another ordinance as to the joint use of poles erected in the streets and alleys of the city of Richmond for the support of wires used in connection with the transmission of electricity.    The first section of this ordinance provides that all poles now erected in the streets or alleys of the city of Richmond for electric wires, except such as support wires required by city ordinances to be removed and run in conduits, shall thereafter be allowed to remain only on terms and conditions thereinafter set forth.    The second section provides that no pole now erected for the support of telephone wires shall remain on any street in said city after 15th December, 1895, unless the owner or user of such pole shall first have petitioned for and obtained the privilege of erecting and maintaining poles for telephone purposes in accordance with the conditions of this ordinance and such others as council may see fit to impose.    If such owner fail to obtain such privilege, and fail or neglect to remove the poles, and restore the street to its former condition, he shall be liable to a fine not more than $500 and not less than $100 for every pole so remaining; each day's failure to be a separate offense. Then follows a number of sections imposing most stringent conditions, placing the whole matter within the control of the city and its officers, reserving the right in the city council at any time to put other restrictions and regulations as to the erection and use of such poles, and from time to time to require the removal of them and the wires to be run in conduits.    On 10th September, 1895, another ordinance was passed, requiring the removal of poles and wires from overhead in certain

streets, and for the construction and using conduits in certain streets. This ordinance was enforceable under heavy penalties, with the provision, also, that any company getting the privilege of putting in these conduits, must make them 100 per cent. larger than is needed for their use, so that the city might run its wires free in such conduits, and any other company may use them for an agreed compensation, or one to be fixed by arbitrators. Threats having been made to carry these ordinances into effect, the complainant filed its bill praying an injunction. It rests its right to use the streets and alleys of the city of Richmond for the purposes of its business under article I, § 8, of the constitution of the United States, and the act of congress of 1866, and denies that in such use it can be prevented or controlled or be in any way dependent upon an ordinance or any ordinances of the city council. The prayer for an injunction is in these words:

"That said city and all others, its agents and employés, may be restrained and enjoined from removing or interfering with its poles and wires in said city, and from interfering with the right of your orator to use said poles and wires, and that all proceedings by said city or its agents and all others to prevent your orator from continuing, renewing, repairing, and extending its lines, wires, and poles in, along, and over the streets and alleys of the said city, and to inflict fines and penalties on your orator for so doing, may be restrained and enjoined; that the right of your orator to use said poles and wires and to carry on its said business along and over the streets of the said city be declared and defined; that the ordinances of said city of the 14th of December, 1894, and of the 10th September, 1895, so far as they undertake to prevent your orator from maintaining and using its lines, poles, and wires over and along the streets and alleys of the city of Richmond, from repairing, renewing, and extending its said poles, wires, lines, and routes as its business may require, may be declared null and void."

Upon the filing of the bill an interlocutory injunction was granted.

The bill was first met by demurrer. The demurrer sets up these defenses: (1) As to the equity of the bill. (2) That the act of congress of 1866 applies only to telegraph companies, and not to companies like the complainant. (3) That the act of congress, even if it does apply to complainant, does not give it any right to erect its poles and wires along the streets of Richmond, without the consent of the city, subject to reasonable regulations as to the routes, position, and number of the poles, and to pay for use of the streets. (4) That, if this is the effect of the act of congress, it is unconstitutional. (5) That the ordinance of 1884 constitutes a binding contract between complainant and the city of Richmond, with a power of rescission by repeal in the city council. That this power was given by the statute of the state of Virginia, and was properly exercised. The demurrer was overruled, and the defendant filed its answer. The portions of this answer which bear upon the conclusions reached in this case are these: A denial that the wires, poles, and lines of the complainant in and over the streets and alleys of said city constitute a part of the postal service of the United States; a denial that complainant is a telegraph company, and a denial that its acceptance of the act of 1866, so far as the telephone exchange in Richmond is concerned, even entitled it to any of the rights and powers authorized by the act; a denial that the acceptance by the complainant of the provisions of the act of 1866 has rendered complainant independent of and superior to the council of the

city of Richmond. The cause came to a full hearing, and the circuit court made the following decree:

"The court, without passing on the rights claimed by the complainant company under the laws of Virginia and the ordinances of the city of Richmond, is of opinion, and doth adjudge, order, and decree, that the complainant company has, in accordance with the terms and provisions and under the protection of the act of congress of the United States approved July 24, 1866 (which is an authority paramount and superior to any state law or city ordinance in conflict therewith), the right 'to construct, maintain, and operate its lines over and along' the streets and alleys of the city of Richmond, both those now occupied by the complainant company and those not now so occupied, and to put up, renew, replace, and repair its lines, poles, and wires over and along said streets and alleys, as well as to maintain, construct, and operate the same, and to connect its lines with new subscribers along said streets and alleys; and the said city of Richmond, its agents, officers, and all others are enjoined and restrained from cutting, removing, or in any way injuring said lines, poles, and wires of the complainant company, and from preventing or interfering with the exercise of the aforesaid rights by the complainant company, and also from taking proceedings to inflict and enforce fines and penalties on said company for exercising its said rights."

The defendant obtained leave to appeal from this decree, and it comes up on the assignments of error. These are 11 in number. The first three are general in their character, going to the preliminary injunction and to the demurrer to the bill. The fourth is to the effect that the ordinance of 1884, passed under the authority of the state of Virginia, and under which the operations of the complainant company were begun and continued, created a contract which bound the complainant to cease its operations upon the streets and alleys of Richmond whenever the city council exercised its right to repeal said ordinance,— a right reserved in the ordinance itself. The fifth and sixth deny that the complainant has any right to the privileges under the act of congress of 1866, which applies to telegraph companies, and not to a telephone company, as complainant is. The seventh, eighth, and ninth deny that, even if complainant comes within the act of 1866, it can be protected, unless it is engaged in interstate commerce business, and only as to such business, and denies that it is protected in its local business. They also deny that there is anything in the contract with the Western Union Telegraph Company which puts complainant in interstate commerce business, or within the protection of section 8, art. I, of the constitution of the United States. The tenth and eleventh assignments assign error as to the scope of the injunction, as it enjoins the city from interfering with the infra state and local business of the complainant, and a right to erect its poles and stretch its wires, without any control on the part of the city. At the bar the appellant declared that the constitutionality of the act of congress of 1866, was recognized and admitted. That all streets which are letter-carrier routes are post roads of the United States. That under the act of 1866 a telegraph company can obtain a right of way for its poles and wires through a city and along its streets against the wish of the municipality.

The decisive questions raised in this case are: First. Does the complainant come within the protection, and is it entitled to the privileges, contained in the act of congress of 1866? Second. If it comes within the provisions of that act, how far has it limited and restricted

itself by accepting the provisions of the ordinance of the city of Richmond? Third. To what extent does the protection of the act of 1866 go? Does it make the company accepting it free of the control of the municipality in which it does business?

1. The act of congress of 1866 in terms speaks of "telegraph companies." Do these words include telephone companies? The telegraph and telephone both communicate messages by means of electricity over wires, for longer or shorter distances. The telegraph communicates these messages by sound of instruments, the telephone by the human voice usually. Both depend upon electricity for their action. Each is but a form of use,—the product and result of the same principle. The names are only used to distinguish the method of communication.

In England, in the case of Attorney General v. Edison Tel. Co., 6 Q. B. Div. 244, Stephens, J., in a carefully prepared and elaborate discussion, says:

"I do not think it necessary to express any opinion on a controversy which is more scientific than legal, and perhaps more properly metaphysical or relative to the meaning of words than scientific, as it seems to turn upon the nature of identity in relation to sound. It is enough to say that, whatever be the merits of the controversy, it does not appear to us that the fact, if it is a fact, that sound itself is transmitted by the telephone, establishes any material distinction between telephonic and telegraphic communication, as the transmission, if it takes place, is performed by a wire acted on by electricity."

In Wisconsin Tel. Co. v. City of Oshkosh, 62 Wis. 32, 21 N. W. 828, this case was cited with full approval, and the doctrine asserted that, in contemplation of law, a telephone and telegraph company are one and the same. In the case of Chesapeake & P. Tel. Co. v. Baltimore & O. Tel. Co., 66 Md. 410, 7 Atl. 810, the court of last resort of that state quote with approval the English case above quoted, and say further:

"It is clear, if we take the term 'telegraph' to mean and include any apparatus or adjustment of instruments for transmitting messages or other communications by means of electric currents and signals, that term is comprehensive enough to embrace the telephone."

The same doctrine is clearly and fully expressed in Duke v. Telephone Co., 53 N. J. Law, 341, 21 Atl. 460. The court quotes the language of Bell in his application for a patent, set out in the Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 778. He says:

"What I claim is the method or an apparatus for transmitting vocal or other sounds telegraphically as herein described, by causing electrical undulations similar in form to the vibrations of air accompanying said vocal sounds."

And so also, Brown, J., now Mr. Justice Brown, in Cumberland Telephone & Telegraph Co. v. United Electric Ry. Co., 42 Fed. 273, says:

"We see no reason to doubt the position assumed by the complainant that a telephone company is a telegraph company."

The complainant, therefore, comes within the protection, and is entitled to the privileges, of the act of 1866.

2. The next question is, if the complainant is within the protection and enjoys the privileges of the act of congress of 1866, how far has it limited and restricted itself by accepting the provisions of the ordinance of the city of Richmond? In June, 1884, the ordinance was passed granting the right of way throughout the city of Richmond to this com-

plainant.   At that time it had not accepted the provisions of the act of 1866, and in no other way could it get the right to enter the city but by permission of the city council.   The permission was given subject to the right of the city council to revoke it at any time after 12 months, and on 14th December, 1894, it was revoked.   In the meantime (1889) the complainant, recognizing the uncertainty of its tenure, concluded to put the enjoyment of its rights on higher grounds, and under paramount authority.   Can it now be said that the complainant cannot avail itself of the privileges of the act of 1866, and must look for them to the city council, because formerly the city granted privileges which it has revoked?   Can a contract, revocable, and revoked by one party, still bind the other party after its revocation?   The complainant is not now using the post roads of the city of Richmond under any grant from the city council.   The council themselves, by their own act, have put an end to any such contract with the complainant.   But for the act of congress, it would be a trespasser on these post roads.   Under the act of congress, it has the right to construct, maintain, and operate lines of telegraph over and along any of the post roads of the United States, and, when an effort is made or threatened to deal with it as a trespasser, it can refer to that act.

3.  The next question is, to what extent does the protection of the act of congress go?   Does it free the company accepting its provisions from any control of the municipality through whose streets it may go?   This act of 1866 authorizes the company accepting its provisions to maintain and operate its lines on any post road.   The act itself prescribes a condition.   The lines of telegraph must not interfere with the ordinary travel.   It is, therefore, subordinate to the public use.   The privileges of this act, "like any other franchise, are to be exercised in subordination to public as to private rights."   St. Louis v. Western Union Tel. Co., 148 U. S. 100, 13 Sup. Ct. 485.   These privileges must be enjoyed, subject to the lawful exercise of the police power.   In Western Union Tel. Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, a telegraph company, protected by the act of 1866, and engaged in business as a common carrier, was held to be a subject of taxation by a state.   The supreme court uses this language:

"It never could have been intended by the congress of the United States, in conferring upon a corporation of one state the authority to enter the territory of any other state, and erect poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the state into which it thus entered."

In the case of St. Louis v. Western Union Tel. Co., supra, a charge by a city for poles was held valid against this same company, the only limitation being that the charge be not unreasonable.   In Western Union Tel. Co. v. Mayor, etc., 38 Fed. 552, an ordinance requiring that telegraph wires be placed in conduits was sustained.   Streets and alleys in a city are the public property placed under the supervision and control of the municipality, the representative of the sovereign power.   They exercise this supervision and control for the benefit of the whole public, those living upon and those passing through such streets and alleys.   And in the exercise of this supervision, which is the police power, they must see to it that the rights of the public and

of private persons are not infringed. The complainant, under the act of congress, has the right to use these highways. Neither the state nor any municipality can prevent it. But this use must be subordinate to the rights of the public, must not endanger those rights. And as the municipality is the guardian of the public in this regard, it can establish such lawful provisions as may regulate the use, always, however, avoiding such regulations as will make the use burdensome and intolerable, and so practically impossible. City of Philadelphia v. Western Union Tel. Co., 82 Fed. 797. This being so, the injunction granted by the circuit court is too broad in its language and effect. There should have been the recognition of a proper exercise of the police power by the municipal corporation, and the use by the complainant of its poles and lines should have been declared to be subject to such regulations and restrictions as may now or may be hereafter imposed by the city council of Richmond, in the proper and lawful exercise of the police power.

The only remaining question is, do the ordinances of the city of Richmond prescribe regulations which will make the use burdensome and intolerable, and practically impossible? "It belongs to the legislature to exercise the police power of the state, subject to the power of the courts to adjudge whether any particular law is an invasion to rights secured by the constitution." Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273. "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business of, or impose unusual and unnecessary restrictions upon, lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts." Lawton v. Steele, 152 U. S. 137, 14 Sup. Ct. 501. If this be the case with regard to the legislature, a fortiori it applies to a municipal corporation, the creature of the legislature. On examination of these ordinances it will be seen that, as a condition precedent to the use of the streets of Richmond, a petition must first be filed for the purpose of erecting and maintaining poles and wires for telephone purposes in accordance with the conditions of that ordinance, and such other conditions as the council may see fit to impose. Ordinance approved 10th September, 1895. The seventh section of this ordinance expressly reserves to the city council the right to put at any time other restrictions and regulations. And the whole tenor and effect of the ordinance is to put the company absolutely under the control of the city. And the terms of the ordinance are enforceable under heavy penalties. The next ordinance,—the one providing for wires in conduits,—after providing that the city council may compel the removal of wires from poles overhead in certain streets, and the putting them in conduits in certain streets, under a penalty of not less than $100 or more than $500 for each pole per week, provision is made for permission to build conduits of sufficient capacity to accommodate the wires in such streets, and to provide for an increase thereof to at least the extent of 100 per cent., the increase of space not to be occupied by the party building the conduits without the consent of the council, the conduit to be used for the wires of the council free, and the city council to allow any other person or corporation to use such conduit for wires

upon paying compensation in the mode prescribed by the city council; this privilege of building and owning conduits to last no longer than 15 years, at the end of which time the city may put such other restrictions, conditions, and charges as it may see fit, or may order their removal at the expense of the owner.     The charge for using or owning any wire in any such conduit shall be for each year until January 1, 1900, two dollars per wire per mile; after January 1, 1900, such larger compensation for the rest of the term as the city council may see fit.     These are some of the conditions now imposed, with the right to impose any others which the council may see fit.     Now, it goes without saying that if the complainant, notwithstanding its claim of protection under the act of congress of 1866, were willing to file a petition to the city council for the privilege of using its streets and alleys, and in that petition agreed, in consideration of its grant, to abide by any present or future condition, regulation, or restriction the council may impose, this would be a binding contract, and would control the complainant. Ashley v. Ryan, 153 U. S. 436, 14 Sup. Ct. 865.     Whatever the rights of the complainant may have been under such a stipulation, it would surrender them, and come within the absolute domination of the city council.     The courts could not review any ordinance to discover if it be within the lawful exercise of the police power, for the complainant would be bound by its contract to obey the ordinance, be it a police regulation or not.     These conditions, regulations, and restrictions already prescribed by the city council appear to be stimulated by a desire to oppress and control, perhaps defeat, the existence of the complainant, and so are not the lawful exercise of the police power.

Let the case be remanded to the circuit court, with instructions to modify the terms of the injunction therein granted so that it may conform to the principles declared in this opinion; the costs of the case to be equally divided between the parties.

BRAWLEY, District Judge.     I concur in the result, but am not inclined to assent to so much of the opinion as holds that a telephone company, such as is described in this case, and whose business is local in character, is within the purview of the act of congress of July 24, 1866, relating to telegraph companies.