CITY OF MONROE *v.* POSTAL TELEGRAPH CO.

1. TELEGRAPHS AND TELEPHONES—POST ROADS—FEDERAL STATUTES —POLICE POWER—MUNICIPAL CORPORATIONS.

> The provisions of the Revised States of the United States, § 5263, that any telegraph company shall have the right to construct, maintain and operate lines of telegraph over and along any of the post roads of the United States, and that such lines shall be so constructed and maintained as not to interfere with the ordinary traffic on such post roads, are permissive merely, and the power is given subject to other lawfully existing rights, among them that of the State and its municipalities to exercise the police power for the safety, health, and convenience of the public.

2. SAME—POLICE POWER—ORDINANCES.

> An ordinance of a city requiring a telegraph company to remove its wires and place them underground within a business district is within the police powers of the municipality, where the use of telegraph poles interferes with traffic and with the effective work of the fire department.[1]

---

[1] On right of municipality to require telegraph or telephone wires to be placed under ground, see notes in 31 L. R. A. 806; 14 L. R. A. (N. S.) 654.

On telegraph company subject to police power of municipality, see note in 13 L. R. A. 454.

3. SAME—POLICE POWERS—ELECTRIC RAILWAY—DISCRIMINATION.
   The act of a city council in requiring the removal of the
   wires of a telegraph company from poles and placing
   them underground within the business district of a city
   cannot be deemed discriminating where it does not ap-
   pear by what right an electric road, which has been per-
   mitted to still use its trolley wire in the middle of the
   street, operates, and it also appears that another telegraph
   company and a telephone company have put their wires
   underground and that the city has done so, except in a
   few instances where the wires have been overlooked.

4. MUNICIPAL CORPORATIONS—ORDINANCES—VIOLATION.
   It is no defense to a violator of an ordinance that others
   also are violating it.

Certiorari to Monroe; Gilday, J. Submitted Febru-
ary 24, 1917. (Calendar No. 27,416.) Decided March
30, 1917.

Mandamus by the city of Monroe against the Postal
Telegraph Company to compel respondent to place cer-
tain of its telegraph wires under ground. From an
order denying the writ, relator brings certiorari. Re-
versed.

*Jesse H. Root* and *Willis Baldwin,* for relator.

*Thornton Dixon,* for respondent.

MOORE, J. This proceeding is for mandamus to
compel the Postal Telegraph Company to place its
wires under ground on Monroe street within the busi-
ness district of the city of Monroe. Monroe street is
the most traveled street in the city. It has the electric
line running from Detroit to Toledo. It also has elec-
tric lights. The poles of the Postal Telegraph Com-
pany are just inside the curb line on the edge of the
sidewalk. They stand about 15 feet from the store
buildings and carry three cross-arms. The poles are
from 40 to 45 feet above the sidewalk. The Stoddard
Telephone Company also has wires on Monroe street.
Proceedings were instituted against both the Postal

Telegraph Company and the Stoddard Telephone Company to make them remove their wires or place them under ground within the restricted district. The proceedings against the Stoddard Telephone Company are now pending.

The ordinance under which these wires were ordered under ground was passed in January, 1913. In pursuance of the ordinance in question the city placed or is placing its light wires under ground. The Western Union Telegraph Company and the Michigan State Telephone Company have placed all of their wires under ground within the restricted district.

After a hearing the court dismissed the petition of relator, but did not give his reasons for doing so. The case is brought here by certiorari.

The respondent insists that the council cannot apply the ordinance to it because, there being no contract relations established by a franchise issued to the respondent to limit or prescribe the use of this highway, and such use having been specifically granted by the sovereign power of the United States in the post road act of 1866, and the respondent having, independent of such act, been in continuous and unquestioned use of its wires and poles for a period of more than 15 years, it has acquired by prescription the right to maintain and operate them within the restricted territory, and that the city of Monroe has no power to require such removal, or to in any wise interfere with the continued use of this portion of Monroe street by respondent. It is also claimed that the city itself flagrantly violates the provisions of this ordinance or permits other corporations to do so, and takes no steps whatever to compel a like action upon the part of such other corporations. It also contends that it cannot appeal to this police power while permitting, without protest or attempt of removal, the electric railway line to maintain its trolley·line in this same street.

·The identical questions presented in this case have been before the courts repeatedly. In *Michigan Telephone Co.* v. *City of Charlotte*, 93 Fed. 11, it is said:

"Counsel for the complainant supports its claim upon the merits of several distinct grounds:

"1. It is insisted that the action taken by the common council violates the provisions of section 5263 of the Revised Statutes of the United States [U. S. Comp. St. 1913, § 10072], which provides that any telegraph company shall have the right to construct, maintain, and operate lines of telegraph over and along any of the post roads of the United States, or which may hereafter be declared such by law, and such lines of telegraph shall be so constructed and maintained as not to interfere with the ordinary travel on such post roads; and it is claimed that Main street, in the city of Charlotte, is such post road, and further, that this company is a telegraph company within the meaning of the statute, citing in support of this latter proposition *City of Richmond* v. *Telephone Co.*, 85 Fed. 19 (28 C. C. A. 659), and the cases relied upon by the court in deciding that case. It is urged that this provision of law confers upon the complainant the right to occupy any street in the city of Charlotte which is a post road, without let or hindrance from the common council. But in my opinion the statute has no such effect. It is permissive, merely, and the power is given subject to other lawfully existing rights, among them, that of the State and its municipalities to exercise police powers for the safety, health, and convenience of the public.   *   *   *

"It is further contended that the action of the common council of the city constitutes an unlawful interference with commerce between the several States. Assuming that this rule applies to telephonic communication as a means of such commerce, it is to be observed that the clause in the Constitution which gives to Congress the control of interstate commerce does not preclude the exercise of power in the States to impose regulations designed for the safety of the local public. *Sherlock* v. *Alling*, 93 U. S. 99; *Smith* v. *Alabama*, 124 U. S. 465, 8 Sup. Ct. 564; *Kidd* v. *Pearson*, 128 U. S. 1 (9 Sup. Ct. 6) ; *Plumley* v. *Massachusetts*, 155 U. S. 461 (15 Sup. Ct. 154) ; *Patapsco Guano*

*Co.* v. *Board of Agriculture,* 171 U. S. 345 (18 Sup. Ct. 862). * * *

"Indeed, each and every of the grounds upon which the complainant relies is negatived by the application of one general proposition, which is that the city, being vested by the legislature with the power of supervision and control of its streets in the manner and to the extent in which that power is given by its charter, has the authority to make such a requirement as it made by the ordinance in question, provided it was made in good faith, and can fairly be seen to be directed to a legitimate purpose falling within the purposes of the delegated authority. As has been already said, if this action of the common council was purely arbitrary, and had no fair tendency in the direction of the public safety, the result would have been different. If power exists, and the exercise of it is not clearly in disregard of its proper bounds, the court is not authorized to determine the validity thereof by its own sense of the wisdom or expediency of the action taken, nor weigh in a nice balance the question of its justice in a general sense. 7 Am. & Eng. Enc. Law (2d Ed.), p. 676, and cases therein cited."

In *Ganz* v. *Telegraph Cable Co.,* 140 Fed. 692 (72 C. C. A. 186), it is said:

"The primary purpose of a highway being for travel and transportation, its use by a telegraph company to facilitate communication is subordinate to its use by the public for the primary purpose. *Railway Co.* v. *Telegraph Ass'n,* 48 Ohio St. 390 (27 N. E. 890 [12 L. R. A. 534, 29 Am. St. Rep. 559]) ; 1 Lewis on Eminent Domain (3d Ed.), § 187; *Hudson River Telephone Co.* v. *Railway Co.,* 135 N. Y. 393 (32 N. E. 48, 17 L. R. A. 674, 31 Am. St. Rep. 838). * * *

"Let us briefly examine the points made:

"This being a post road, and the telegraph company having complied with the provisions of section 5268 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3581 [U. S. Comp. St. 1913, § 10077]), it is insisted it has a right, under section 5263 (U. S. Comp. St. 1901, p. 3579 [U. S. Comp. St. 1913, § 10072]), to maintain its telegraph line where it is, by virtue of the authority conferred by that section.

It may be noted that, while the section does grant to cerain telegraph companies the right to construct and maintain their lines on the military or post roads of the United States, it contains the express provision that such lines shall be so maintained as not to 'interfere with the ordinary travel on such * * * roads.' But, passing this, it is established by numerous decisions that the statute is permissive merely. It was not intended by its passage to interfere with the proper control and regulation of such highways by the States, counties, or municipalities which had them in charge. *Michigan Telegraph Co.* v. *City of Charlotte*, 93 Fed. 11, 14; *City of Toledo* v. *Telegraph Co.*, 107 Fed. 10, 13 (46 C. C. A. 111, 52 L. R. A. 730); *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530 (8 Sup. Ct. 961); *City of St. Louis* v. *Telegraph Co.*, 148 U. S. 100 (13 Sup. Ct. 485); *City of Richmond* v. *Telephone Co.*, 174 U. S. 761, 772 (19 Sup. Ct. 778).

"But it is contended that, apart from the Federal post road statute, the erection of the telegraph line, under authority granted by the commissioners for a consideration, vested in the appellee a right to maintain its poles and wires where they are indefinitely, and that it cannot be deprived of this right, which is a valuable one, but by due process of law. It is enough to say in reply to this that the county commissioners had no power to grant such a right or franchise. Their power was limited. They had a right to permit the telegraph company to maintain its poles and wires in the road, provided they should not incommode the public in its use, but that was the extent of their power; and whether the public is at any time so incommoded is a question to be determined according to the conditions existing at the time. A location not inconvenient when made may become so because of changed conditions; and whether it has or not must be ascertained by the commissioners in office when the inquiry is made. No board has power to determine for all time just how a highway shall be used. The use may be changed as the new conditions demand. *Elster* v. *City of Springfield*, 49 Ohio St. 82, 97 (30 N. E. 274); *Daily* v. *State*, 51 Ohio St. 348, 356 (37 N. E. 710, 24 L. R. A. 724, 46 Am. St. Rep. 578); *Wabash R. Co.* v. *City of Defiance*, 52 Ohio St. 262 (40 N. E. 89); *Wabash R. Co.* v. *City*

of Defiance, 167 U. S. 88, 97 (17 Sup. Ct. 748) ; City of Zanesville v. Fannan, 53 Ohio St. 605 (42 N. E. 703, 53 Am. St. Rep. 664) ; Lake Shore, etc., R. Co. v. City of Elyria, 69 Ohio St. 415, 432 (69 N. E. 738) ; Chicago, etc., R. Co. v. Nebraska, 170 U. S. 57, 75 (18 Sup. Ct. 514) ; American Rapid Telegraph Co. v. Hess, 125 N. Y. 641, 646 (26 N. E. 919, 13 L. R. A. 454, 21 Am. St. Rep. 764) ; Chicago, etc., R. Co. v. City of Quincy, 136 Ill. 563, 571 (27 N. E. 192, 29 Am. St. Rep. 334). * * *

"It is submitted that the location of the electric railway, and not that of the telegraph line, is the cause of the trouble. It is said that the telegraph line was there before the electric railway, and there was plenty of room on the pike then for vehicles. This is but another phase of the argument that the telegraph company got a perpetual right to maintain its poles in the pike. It never did get such a right. The commissioners retained the power to regulate the use of the highway by quasi public corporations, and might have required the appellees to remove its poles to the north side of the pike when it gave the electric railway company the right to build its road along or near the south side."

In sustaining the right of the village to exclude the setting of a line of poles on Chicago street between West and Maumee streets, this court said:

"The complainant in the case at bar urges that this one block is its main business block, and that to permit it to be incumbered with poles and wires would not only render it unsightly, but would appreciably increase the risk from fire by making it more difficult for the fire department to erect ladders and reach a conflagration. Neither of these considerations is without weight. The mere fact that the route designated by the municipality is less convenient or involves on the part of the telephone company a larger expenditure is of no consequence so long as the company is not thereby prevented from reaching all those it desires to serve or who desire service from it. The record before us fails to disclose this condition. Where a municipality, in the exercise of its inherent police power, adopts an ordinance reasonably regulating the

manner, character, or place of construction of a contemplated line, the telephone company must comply with such regulations and exercise its right of entry under the general powers conferred by the State subject to them." *Village of Jonesville* v. *Telephone Co.*, 155 Mich. 86 (118 N. W. 736, 130 Am. St. Rep. 562, 16 Am. & Eng. Ann. Cas. 439).

See, also, *City of Richmond* v. *Telegraph Co.*, 174 U. S. 761 (19 Sup. Ct. 778); *Michigan Telephone Co.* v. *City of St. Joseph*, 121 Mich. 502 (80 N. W. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520); *Michigan Telephone Co.* v. *City of Benton Harbor*, 121 Mich. 512 (80 N. W. 386, 47 L. R. A. 104); *Traverse City Gas Co.* v. *City of Traverse City*, 130 Mich. 17 (89 N. W. 574); *Postal Telegraph-Cable Co.* v. *Ingraham*, 228 Fed. 392.

In the instant case the mayor testified:

"I have seen Monroe street from the north side of First street to Front street so congested with people that these telegraph poles interfered with traffic. I have seen it a good many times north of Front street. When it was so congested, people did what was absolutely necessary to get around the poles. * * * I have seen that condition of the street nearly every Sunday afternoon. I frequently go on the west side of Monroe street and I see it jammed there, crowded so that these poles interfere with traffic."

There was other testimony of like character, and also that the wires strung on the poles would interfere with the work of the fire department.

With reference to the claim that the action of the council is descriminating, it may be said that it does not appear in the record by what right the electric road operates, and it does appear that the trolley wire is in the middle of the street. It also appears that the Western Union and the Michigan Telephone Company have buried their wires, and that the city has done so except as to two or three wires that inadvertently escaped the attention of those whose duty it was to act.

Municipalities like individuals cannot do everything at once. The ordinance does not anywhere indicate an intention to discriminate. It is no defense to a violator of an ordinance that others are also violating it. The council in passing the ordinance was acting within its police powers, and the writ of mandamus should have been issued as prayed.

The action of the court below is reversed, and the issuance of the writ is granted, with costs to the relator.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.