MICHIGAN TEL. CO. v. CITY OF CHARLOTTE et al.

(Circuit Court, W. D. Michigan, S. D. April 11, 1899.)

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A claim made by a telephone company in its bill, in good faith, that, by reason of the construction of its system of poles and wires in the streets of a city with the consent of the city, a contract was created which entitles it to maintain such system where it was erected, and that such contract is impaired by an ordinance subsequently passed by the city, states a federal question, which gives a circuit court of the United States jurisdiction of a suit to enjoin the enforcement of the ordinance.

2. TELEGRAPHS AND TELEPHONES—RIGHT TO USE POST ROADS — LOCAL POLICE REGULATIONS.

The right given telegraph companies by Rev. St. U. S. § 5263, to construct and maintain their lines over all post roads of the United States, is permissive only, and subject to all state or local legislation regulating its exercise; and such permission does not affect the right of a municipality, in the exercise of its police powers, to enact and enforce ordinances intended to promote the safety and convenience of the public in the use of its streets.

3. SAME—INTERSTATE COMMERCE.

    The constitutional provision vesting in congress the exclusive power to regulate and control interstate commerce does not preclude the exercise by states of their police powers, by imposing on telephone lines regulations designed for the safety of the local public.

4. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACTS—EFFECT OF CONTRACT BY CITY.

    A city cannot, by a contract which permits a telephone company to construct and maintain its line upon a certain street, deprive itself of the power to enact such legislation as is necessary for the general welfare; and an ordinance modifying such permission, or requiring the removal of the line to another location, cannot be held unconstitutional, as an impairment of the obligation of the contract, where it is designed for the public safety and convenience.

5. SAME—DUE PROCESS OF LAW—ORDINANCE REQUIRING TELEPHONE LINE REMOVED FROM STREET.

    All grants of rights or privileges in streets by a city vested by its charter with the power of supervision and control of its streets are subject to the power and duty of the city to enact such legislation as may be required from time to time in the proper exercise of such supervision and control in the interests of the public; and an ordinance which can fairly be seen to be directed to a legitimate purpose, falling within such power and duty,—as one requiring a telephone company which had been granted the right to maintain its line in a certain street to remove the same, on the ground that it had become dangerous and inconvenient to persons using the street, but offering another location for the erection of the line, which is a reasonable substitute,—is within the legitimate powers of the city, and cannot be held unconstitutional by a court, as depriving the company of its property without due process of law.

In Equity.   On motion for preliminary injunction.

Wells, Angell, Boynton & McMillan, for complainant.

James M. Powers and Garry O. Fox, for defendant.

SEVERENS, District Judge.   The bill in this case was filed by the complainant, the Michigan Telephone Company, against the city of Charlotte, to restrain it from enforcing an ordinance requiring the company to transfer its poles and wires from where they stand, in front of blocks 24 and 31, on Main street, in said city, to the alley next adjoining said street, and running parallel therewith.  This ordinance was passed upon the grounds that the poles now standing and supporting the wires along said street are decayed to such an extent that they have become inadequate to the support of the system of wires which they carry, and also that the company has accumulated on said poles a great number of wires, which it employs in the conduct of its business, and to such an extent as to endanger the life and safety of the citizens of said city, and others occupying the buildings on said street or traveling therein.  The power of the common council to order such a transfer is denied by the complainant, which alleges that while its poles are defective, and the system needs repair in that respect, it proposes to substitute new and sufficient poles in place of the old, and in this respect stands ready to comply with the requirement of the ordinance.  But the complainant denies that the wires strung upon its poles constitute any menace to the lives or safety of the public, and alleges that the transfer of its poles and wires to the adjoining alley would be attended with considerable expense and inconvenience, and that the common council transcended its

authority when it ordered such transfer. In addition to its answer, the city has submitted several affidavits in support thereof; and the substance of the case set up in its behalf is not only that the poles are inadequate, but also that, independently of this, the multitude of wires strung thereon creates a condition of danger which it is the duty and right of the common council to obviate by directing the transfer of the company's lines to the adjoining alley, which is much less frequented by the public, and where the danger would be greatly minimized.

The company introduced its telephone system into the city of Charlotte in the year 1883, under the authority of section 3718d, 3 How. Ann. St., which reads as follows:

"Every such corporation shall have power to construct and maintain lines of wire or other material, for use in the transmission of telephonic messages along, over, across, or under any public places, streets and highways, and across or under any of the waters in this state, with all necessary erections and fixtures therefor: provided, that the same shall not injuriously interfere with other public uses of the said places, streets, and highways, and the navigation of said waters."

The charter of the city of Charlotte contained the following provision delegating the supervision and control of its streets to the city:

"The common council shall have supervision of all public highways, bridges, streets, avenues, alleys, sidewalks, and public grounds within the city, and shall cause the same to be kept in repair and free from nuisance." Loc. Acts 1895, p. 198, § 170.

This clause of the charter was in force at the time when the complainant introduced its system into the city, and still remains operative. It is sufficiently shown that the city gave its consent to the original construction of the telephone system along the streets of the city,—among them, Main street, where the poles and lines have since continued. It is also clear enough that the proposed transfer from Main street to the alley could be made without any very considerable expense; the change involving eight or ten additional poles, increasing the length of the wires to the extent of crossing about two blocks, and perhaps some minor incidental material for making connections.

The defendant, the city of Charlotte, contends that no case is stated by the bill which brings it within the jurisdiction of the federal court. Several grounds for jurisdiction are relied upon by the complainant,—among them, this: That the introduction of the telephone system and service by the complainant into the city of Charlotte, with the acquiescence and concurrence of the city, and the incurring of the cost of the construction and maintenance of the system, created a contract that the company might take and retain possession of the streets which it used, and that this contract was impaired by the passage of the ordinance complained of. This is the claim made by the complainant, and, if made in good faith, it affords sufficient ground for the exercise of jurisdiction under that clause of the constitution of the United States which forbids the impairment of the obligation of contracts by state legislation. City of New Orleans v. New Orleans Waterworks, 142 U. S. 79, 12 Sup. Ct. 142; City Ry. Co. v. Citizens' St. R. Co., 166 U. S. 557, 17 Sup. Ct. 653. And there is no reason to doubt the bona fides of the company in making this claim.

Counsel for the complainant supports its claim upon the merits on several distinct grounds:

1. It is insisted that the action taken by the common council violates the provisions of section 5263 of the Revised Statutes of the United States, which provides that any telegraph company shall have the right to construct, maintain, and operate lines of telegraph over and along any of the post roads of the United States, or which may hereafter be declared such by law, and such lines of telegraph shall be so constructed and maintained as not to interfere with the ordinary travel on such post roads; and it is claimed that Main street, in the city of Charlotte, is such post road, and, further, that this company is a telegraph company, within the meaning of the statute,—citing in support of this latter proposition City of Richmond v. Southern Bell Telegraph & Telephone Co., 28 C. C. A. 659, 85 Fed. 19, and the cases relied upon by the court in deciding that case. It is urged that this provision of law confers upon the complainant the right to occupy any street in the city of Charlotte which is a post road, without let or hindrance from the common council. But in my opinion the statute has no such effect. It is permissive, merely, and the power is given subject to other lawfully existing rights,—among them, that of the state and its municipalities to exercise police powers for the safety, health, and convenience of the public. In my opinion, it was not the intention of congress to arbitrarily disturb or interfere with the exercise of the police powers of the state. A statute giving such authority would be anomalous, and, indeed, of doubtful validity. It is a rule of general application that legislation by congress in respect to all such matters, conferring rights and privileges, is deemed to be subject to local legislation enacted for the purpose of regulating the exercise of such rights and privileges so as to protect the citizens of the state in respect to those matters which fall within the scope of the police power. Of course, it is not intended to say that the local authority may arbitrarily interfere with such rights and privileges, and, under the guise of its conceded authority, enact legislation which is really designed to accomplish some ulterior purpose beyond the scope of its legitimate power.

2. It is further contended that the action of the common council of the city constitutes an unlawful interference with commerce between the several states. Assuming that this rule applies to telephonic communication as a means of such commerce, it is to be observed that the clause in the constitution which gives to congress the control of interstate commerce does not preclude the exercise of power in the states to impose regulations designed for the safety of the local public. Sherlock v. Alling, 93 U. S. 99; Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564; Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6; Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154; Patapsco Guano Co. v. North Carolina Board of Agriculture, 171 U. S. 345, 18 Sup. Ct. 862.

3. It is also urged that the ordinance of the common council amounts to an impairment of the obligation of the contract between the complainant and the city. But here, again, assuming, as we do, that the contract exists, it is well settled that, with respect to contracts of

this character, they are subject to such incidental modification as results from legislation required in the public interest  It is a fundamental proposition that the legislature cannot deprive itself, by contract, of the power to pass such laws as are necessary for the general welfare of the public.  Prominent among the kinds of legislation which may be enacted for that purpose are such as are designed for the public safety and convenience.  New York & N. E. R. Co. v. Town of Bristol, 151 U. S. 556, 14 Sup. Ct. 437; Wabash R. Co. v. City of Defiance, 167 U. S. 88, 17 Sup. Ct. 748; Chicago, B. & Q. R. Co. v. Nebraska, 170 U. S. 57, 18 Sup. Ct. 513.

4. It is also said that the action of the common council deprives the complainant of its property without due process of law.  This assumes that the complainant has a vested right to occupy this particular street.  But this position is untenable.  The city was required, when it admitted the complainant to its streets, to consider the public interests, in defining in what particular streets the lines might be located.  The then existing conditions might have made it proper that this street should be so used.  But the construction of buildings on the street, and the multiplication of wires, may have rendered it now imprudent that they should remain.  The same duty of provident supervision on the part of the city continues to rest upon it.  If there was any vested right in the privilege which was accorded by the city to construct and maintain telephone lines in the streets, it is a privilege which must continue in subordination to the strictly legislative action of the city which it exercises in respect to the matters delegated to it by the legislature for the public welfare.  Northwestern Fertilizing Co. v. Village of Hyde Park, 97 U. S. 659; Railroad Co. v. Gibbes, 142 U. S. 386–393, 12 Sup. Ct. 255; Banking Co. v. Smith, 128 U. S. 179, 9 Sup. Ct. 47; Coates v. Mayor, etc., 7 Cow. 585.

Indeed, each and every of the grounds upon which the complainant relies is negatived by the application of one general proposition, which is that the city, being vested by the legislature with the power of supervision and control of its streets in the manner and to the extent in which that power is given by its charter, has the authority to make such a requirement as it made by the ordinance in question, provided it was made in good faith, and can fairly be seen to be directed to a legitimate purpose falling within the purposes of the delegated authority.  As has been already said, if this action of the common council was purely arbitrary, and had no fair tendency in the direction of the public safety, the result would have been different.  If power exists, and the exercise of it is not clearly in disregard of its proper bounds, the court is not authorized to determine the validity thereof by its own sense of the wisdom or expediency of the action taken, nor weigh in a nice balance the question of its justice in a general sense.  7 Am. & Eng. Enc. Law (2d Ed.) p. 676, and cases therein cited.  In my judgment, there is no sufficient ground upon which the court would be warranted in holding that the common council in this instance transcended its power.  It does not exclude the telephone company, but regulates the details of its operations in the service rendered, by requiring it to change the location of this line to a near-by place in the city.  And this does not impose a duty so burdensome as to excite any apprehen-

sion that serious hardship is inflicted. It may be that the city cannot compel the company to erect its poles and stretch its wires in the alley; but it has the power, if the necessity therefor exists, to compel the discontinuance of the use of Main street, and in doing this it is bound to provide, if practicable, a reasonable substitute therefor. This it has done. The result is that the motion must be denied. Let an order be entered accordingly.