## LOUISVILLE HOME TEL. CO. v. CUMBERLAND TELEPHONE & TELEGRAPH CO.

(Circuit Court of Appeals. Sixth Circuit. November 6, 1901.)

### No. 1,005.

1. APPEAL—REVIEW—ORDER GRANTING PRELIMINARY INJUNCTION.

    An order granting or refusing a preliminary injunction will not be reversed on appeal, unless the lower court has manifestly fallen into some mistake of law or fact material to its decision.

2. TELEPHONES—RIGHTS IN STREETS—PRIORITY OF OCCUPATION.

    While the prior occupancy by a telephone company of space in a street for its poles and wires under a franchise granted for such purpose will entitle it to the continued enjoyment thereof, without substantial impairment, so long as it continues to perform its obligations, its right to such space is not absolutely exclusive, but is sub-

ject to the right of another company to enjoy a like privilege therein granted under power reserved by the municipality, provided there is no unreasonable or unnecessary interference with the operation of its own line, and it will suffer no serious injury therefrom.[1]

**3. SAME.**

A telephone company constructed its line in the streets of a city under a franchise granted therefor which expressly reserved the right to the city to grant similar rights to other companies. Thereafter a franchise was granted to a second company, which was required to construct its line under the directions of the board of public works, and such board required its line on certain streets to be placed on the same side and over the same space occupied by the first company. The poles were planted in line with those of the first company, but were extended 25 feet higher, with the cross arms 20 feet above those of the old line. *Held*, that there was no such substantial interference with the rights of the first company, or serious injury threatened to the operation of its line, as entitled it to a preliminary injunction to prevent the placing of wires on the poles of the second company and their use pending the trial of a suit for a permanent injunction.

**4. SAME—POWER OF CITY TO DESIGNATE LOCATION.**

It is within the power of a city to designate on what part of its streets a telephone company shall construct its line, and the exercise of such power is presumptively valid, and cannot be interfered with by the courts, unless shown to have been arbitrary and unreasonable.

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

This is an appeal from an order of the circuit court granting a preliminary injunction in a suit in equity brought by the Cumberland Telephone & Telegraph Company against the Louisville Home Telephone Company for the purpose of restraining the latter company from erecting or maintaining telephone poles and wires along the south side of Park avenue and the north side of Hill street, in the city of Louisville, within the limits of the space occupied by the complainant. 110 Fed. 593. The bill alleged that the complainant (who is here the appellee) was a consolidated company, the constituents of which were the Ohio Valley Telephone Company, a local company at Louisville, and another company bearing the same name as that assumed by the consolidated company. This last-named constituent was doing business in the state at large outside of the city of Louisville. The Ohio Valley Telephone Company was incorporated by an act of the legislature of Kentucky approved April 3, 1886. By the fifth section of the act it was provided that "the said company may construct, equip and maintain said telephone systems and exchanges, and erect poles and string wires thereon, and operate its telephone lines over, along or under any highway, street or alley in the city of Louisville, with and by the consent of the general council of said city; and it may purchase or lease from any corporation created under the laws of this commonwealth, on such terms as may be agreed on, any telephone system or exchange, its poles, wires, apparatus, contracts, licenses, patents or interests therein, equipments, rights of way, easements and servitudes, in the highways, streets and alleys in the city of Louisville, together with all of its properties, and when purchased or leased shall have the power to maintain and operate the same along, over or under the highways, streets and alleys of the city of Louisville: provided, however, that such telephone poles, lines and systems have heretofore been granted the right of way or easements in the highways, streets and alleys in the said city of Louisville by the general council thereof. And the said company may also construct, equip and maintain telephone lines along, over or under the

---

[1] Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Telephone & Telegraph Co. v. City of Richmond, 44 C. C. A. 155.

highways, streets and alleys, and across any water course within this commonwealth, so as not to obstruct the same, and said company may connect its lines with those of any other company on such terms as may be agreed on." 1 Acts 1885-86, p. 1175.

On the 17th of August the common council of the city passed an ordinance, which, after reciting the preceding fifth section of the act of the legislature, proceeded as follows: "Therefore be it ordained that the said act, in so far as it refers to constructing, equipping, operating, and maintaining telephone systems and exchanges, and erecting poles and stringing wires thereon; to constructing, operating, and maintaining conduits and manholes; to laying pipes, cables, conductors, and wires, and operating telephone wires over, along, or under the highways, streets, and alleys in the city of Louisville, is hereby ratified and confirmed, and the right is hereby granted and confirmed to the said the Ohio Valley Telephone Company, its successors and assigns, to construct, equip, operate, and maintain telephone systems, and construct, operate, and maintain conduits and manholes, to lay pipes, cables, conductors, and wires, and operate its telephone lines over, along, or under any street, avenue, alley, or sidewalk in the city of Louisville." The ordinance contained this further provision: "Nothing in this ordinance shall be so construed as to give to the said telephone company, its successors or assigns, any exclusive right to erect poles, or to lay underground conduits, pipes, cables, conductors, or wires, in the streets, avenues, alleys, or sidewalks of the city of Louisville." And by the ninth paragraph of the ordinance it was ordained: "That within thirty days from the passage of this ordinance the said the Ohio Valley Telephone Company, its successors and assigns, shall formally agree, in writing, to accept the terms of the provisions of this ordinance, and file the said written copy of said agreement, and also the aforementioned bond, with the mayor of the city of Louisville, and from and after the date of said acceptance this said accepted ordinance shall take effect and be in force as a contract between the said city of Louisville and the said the Ohio Valley Telephone Company." The provisions of the ordinance were accepted by the company, and it proceeded to construct, and thereafter maintain, a telephone system in the streets of Louisville until June 27, 1900, when it was consolidated under the constitution and laws of Kentucky with the Cumberland Telephone & Telegraph Company, as above stated. Since that time the consolidated company has continued to maintain and operate the telephone system in the city under the power granted to the Ohio Valley Telephone Company and devolved upon the consolidated company by operation of law. Among the sets of lines so constructed and operated was one on the south side of Park avenue, extending from Sixth street to the alley between Fifth and Fourth streets, and another on the north side of Hill street, extending from Sixth street to the alley between Fifth and Fourth streets, upon each of which lines poles and cross arms had been erected and numerous wires were strung.

Some time in 1900 the Louisville Home Telephone Company was incorporated under the laws of Delaware, and on November 5th of that year the common council of the city of Louisville passed an ordinance, entitled "An ordinance to provide for the sale of the franchise or privilege to construct, establish, maintain, and operate a telephone system in the city of Louisville," and containing the following provisions:

"Section 1. That there shall be sold to the highest and best bidder for a term of twenty years the franchise or privilege to construct, establish, maintain, and to operate a telephone system for public and private use in the city of Louisville, including the necessary conduits, subways, manholes, wires, poles, and other equipments, and also the right of way over, along, under, through, and in the streets, avenues, alleys, lanes, parks, squares, bridges, and other public places in said city, for the purpose of running the subways, manholes, poles, wires, and other equipments necessary to construct, establish, maintain, and operate said telephone system in the city of Louisville in accordance with the conditions, terms, and limitations of this ordinance."

"Sec. 5. That any person, firm, or corporation owning or exercising such franchise or privilege may assign or transfer the same, but it shall not be assigned or transferred directly or indirectly, in whole or in part, or for the

benefit of the owner or owners of any competing telephone system operating in the city of Louisville.

"Sec. 6. That the said telephone system shall be located and constructed in the public ways and places in the city of Louisville under the supervision of the board of public works."

"Sec. 14. That the franchise or privilege herein provided for shall not be construed as being in any way exclusive, or as preventing the general council of the city of Louisville from providing for the sale of similar franchises or privileges to other persons, companies, or corporations."

The Home Company became the purchaser at the sale of the franchise for the price of $10,000. Desiring to construct lines, each of several squares in length, along Park avenue and Hill street, upon some portion of which the other company had, as above stated, already constructed its lines, the Home Company made application to the board of public works to locate its line in those streets. By resolutions of the board, duly passed, the Home Company was permitted to construct its pole routes along the north side of Hill street and the south side of Park avenue. That company proceeded to erect its poles accordingly, and in that portion of those streets which was already occupied by the other company, set its poles in the same line with those of the other company and run them up between the wires, 25 feet higher than those of the other company. The reasons which induced the location of the Home Company's poles and lines on the same route with that of the other company on this portion of the streets appear to have been mainly these: The only feasible place for setting the poles is by the side of the street at the curbstones. On the south side of Hill street that place was already occupied by the poles and wires of an electric light line, which, on account of the greater voltage required in that service, rendered the proximity of telephone wires not only dangerous to the system itself, but to the lives of those employed about them. On the south side of Park avenue there were no residences. The other company was located there, and for a distance of two or three poles there was an electric light line. On the north side of the avenue there were no electric lines, but the territory north of the street was filled with residences, and fine shade trees were standing by the side of the street, which would have to be mutilated if electric wires of any kind were strung there. Other reasons are suggested for the determination of the board of public works, but in the view taken of the case by the court here it is not necessary to detail them. The Home Company having erected its poles and cross arms for the wires, the Cumberland Company filed this bill, alleging that by reason of the prior location of its poles, cross arms, and wires, which covered a width of 8 feet, it was entitled to retain that space free from interruption; that, although the Home Company proposed to carry its poles 25 feet higher than its own, and string its wires some 20 feet or so higher than its own, such construction would be injurious to its rights, for the reasons that by the breakage of wires, which frequently happens, the lines above would fall down upon its wires and disturb its operations; that the poles would abrade its wires and cables and destroy their insulation; that its workmen would be imperiled while making additions or repairs, and that it intended to extend its own lines upward and would require the space above.

Affidavits were filed in support of the averments of the bill, and upon these (the bill and affidavits) the motion for a preliminary injunction was brought on. The Home Company filed affidavits controverting the grounds on which substantial injury would be likely to result to the complainant from the intended construction, offering to provide means for insulating complainant's wires and cables from the structures of the Home Company, and averring that it had tendered the choice of location for the wires, whether above or below, to the complainant, which offer had been rejected. Upon the hearing, the court made the following order, granting the injunction prayed: "In consideration thereof it is now adjudged and decreed that until the further order of court it [defendant] be, and it is, restrained and enjoined from erecting or maintaining any poles or cross arms, or stringing any wires thereon, any of which shall encroach on a space of the breadth of 8½ feet, which space is the line of telephone poles of complainant on the south side of Park avenue between Sixth street and the first alley west of Fourth street, and the north

side of Hill street from Sixth street west [east?] to the first alley west of Fourth street." From this order the defendant appeals.

Helm Bruce, for appellant.

David W. Fairleigh, for appellee.

Before DAY and SEVERENS, Circuit Judges, and THOMPSON, District Judge.

SEVERENS, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

This being an appeal from an interlocutory injunction, we are required, in making our determination, to recognize the rule, which we have announced and applied in several previous cases, that we should not disturb the order unless the lower court has manifestly fallen into some mistake of law or fact material to its decision. Garrett v. T. H. Garrett & Co., 24 C. C. A. 173, 78 Fed. 472; Proctor & Gamble Co. v. Globe Refining Co., 34 C. C. A. 405, 92 Fed. 357; Thomas G. Plant Co. v. May Co., 44 C. C. A. 534, 105 Fed. 375, 379. The circuit court appears to have accepted as correct the contention of the complainant that, by its prior occupation of the space which it occupied by erecting its poles, cross arms, and wires over a width of 8 feet and at the height of 25 feet, it acquired an exclusive right to occupy that width of space from the ground upward without limitation, and this without any intrusion by another party; for the order must be construed by reference to the fact that the intrusion which the defendant was charged with intending to make when the injunction was moved for was that of stringing its wires above and out of contact with the structures of the complainant. In this the court misconceived the nature and extent of the rights of the complainant. It may properly be conceded that its prior occupation of space under the franchise granted by the statute and ordinance would entitle it to the continued enjoyment thereof, so long as it continued to perform its obligations, without substantial impairment. But its right is not absolutely exclusive. It is subject to such incidents as result from the exercise of the rights of other parties who have acquired a valid franchise of similar character. It is implied in such grants as were here made to the first company that the grant is subject to such limitations as will enable another company to enjoy a like franchise, and no property right is invaded by the adoption of such measures by the second company as will enable it to exercise its privilege, provided there is no unreasonable and unnecessary invasion of the operations of the first occupant. For the property right of the first is not to a monopoly. It is bound to exercise its privilege in such a way as to give room to another coming in under the power reserved. In the present case the common council of the city expressly reserved the authority to grant to others, if it should deem it for the public interest, the same privileges in its streets as it granted to the complainant. Its determination that it was expedient to grant the Home Company the same privilege it had granted to the Ohio Valley Company cannot be gainsaid, and the old company is bound to recognize the new-

comer and grant all reasonable accommodation. Upon principle it may be doubted whether the first company could block the way in any of the streets so as to prevent the possible exercise of the power reserved to the common council.

It is not intended, of course, to say that the first occupant may be despoiled, or the substance of its right appropriated. But this does not happen from merely giving place to a rival company, whose presence was expressly stipulated for by the contract, nor, probably, if the presence of the new party was the result of the exercise of a power reserved by implication in such a grant of privileges. The distinction between the actual invasion of the property of a former licensee engaged in supplying public utilities and those incidental consequences which result from the authorized exercise of the privileges granted to a subsequent licensee for similar purposes was pointed out in an elaborate opinion by Judge Brown, now a justice of the supreme court, in Cumberland Telephone & Telegraph Co. v. United Electric Ry. Co. (C. C.) 42 Fed. 273, 12 L. R. A. 544, where the authorities are collated.

Mere inconvenience will not afford ground for complaint. The injury must be grave and unwarranted by the requirements necessary to such further exercise of the municipal authority in that direction as may be deemed expedient. The evidence in the record leaves no doubt whatever in our minds that the inconveniences likely to be suffered by the Cumberland Company in consequence of the proposed construction by the Home Company are comparatively trivial. The affidavits of experts and practical men show that the practice of constructing a system of lines by one company above the lines of another is very common in many cities which are enumerated, especially where both are telephone systems, and no substantial inconvenience has been found to result. The city at all times has the power of regulation. It may not be arbitrarily exercised, but within reasonable bounds the city authority may rightfully designate in what manner the public interests require public services to be rendered, to the extent, at least, of determining in what part of a street the facilities shall be located, and presumptively this exercise of the police power is valid. Its right to do this was not surrendered by the city when it made the grant of the franchise to the Ohio Valley Company. The power in this instance was delegated to the board of public works, and there is an entire lack of proof that the board acted arbitrarily, or without due regard to the rights acquired by the Cumberland Company. Com. v. City of Boston, 97 Mass. 555; Chicago, St. L. & N. O. R. Co. v. Louisville & N. R. Co. (Ky.) 58 S. W. 799; Gay v. Telegraph Co., 12 Mo. App. 485; Michigan Tel. Co. v. City of Charlotte (C. C.) 93 Fed. 11, and the authorities there cited. Besides, it follows from the conditions we have noted that there was no grave danger to be apprehended at the time this bill was filed. The poles of the Home Company had been already erected and the cross arms put on. No action appears to have been taken until after this was done. There appears no such impending danger of injury to the complainant from the stringing and maintenance of the wires pending the suit as would justify

the interference of the court before the final hearing and anticipating the entire purpose of the bill.   Blount v. Societe Anonyme du Filtre, etc., 3 C. C. A. 455, 53 Fed. 98 (per Jackson, J.).

The order granting the preliminary injunction must be reversed, with costs.