GANZ et al., County Com'rs, et al. v. OHIO POSTAL TELEGRAPH CABLE CO.

(Circuit Court of Appeals, Sixth Circuit. November 18, 1905.)

No. 1,420.

1. TELEGRAPHS—USE OF HIGHWAY—SUBORDINATION TO USE FOR TRAVEL.

The primary purpose of a highway being for travel and transportation, its use by a telegraph company to facilitate communication is subordinate to its use by the public for such primary purpose.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Telegraphs and Telephones, § 6.]

2. SAME—POST ROADS—SCOPE OF FEDERAL STATUTE.

The right given to telegraph companies by Rev. St. § 5263 [U. S. Comp. St. 1901, p. 3579], to use post roads for their lines, on compliance with certain conditions, is permissive only, and the statute was not intended to interfere with the proper control and regulation of highways by the states, counties, or municipalities which have them in charge.

3. SAME—POWER OF LOCAL AUTHORITIES TO REGULATE USE.

Under the statutes of Ohio, which provide that the use of a public road by a telegraph company "shall not incommode the public in the use of such road," a board of county commissioners, which has been given control of a pike by the state, cannot grant to a telegraph company the right to maintain its poles and wires thereon, except subject to such statutory limitation; nor will such a grant preclude it or a succeeding board from ordering a removal of such poles and wires, if at any time through changed conditions their location on the highway shall incommode the public in its use, and such action in ordering a removal will not be interfered with by the courts, unless an abuse of discretion is shown.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

For opinion below, see 137 Fed. 947.

James Hunt and S. S. Richards, for appellants.
Charles R. Miller, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit brought by the appellee, the Ohio Postal Telegraph Cable Company, against the appellants, the commissioners of Sandusky county, Ohio, to restrain the latter from enforcing a resolution requiring the former to remove its telegraph line from the center to the north side of the Maumee Pike, on the ground that the present location of the same seriously incommodes the public in the use of the highway. A cross-bill was filed praying a mandatory injunction requiring the telegraph company to move its line as directed in the resolution. The court below found in favor of the telegraph company, granting it the relief prayed for and dismissing the cross-bill.

The Maumee Pike is an old thoroughfare, running east and west across the northern part of Ohio. It is 120 feet wide and the part involved is about 18 miles long, running from the western line of Sandusky county eastwardly to the city of Fremont. The strip of land occupied was ceded to the state of Ohio by the act of Congress of July 7, 1838. The state built a macadamized roadway about 25 feet wide along the middle part of this strip, and continued to maintain and control it until 1888, when the custody and control of the Maumee Pike was transferred by the General Assembly to the counties through which it ran. 85 Ohio Laws, p. 165; 91 Ohio Laws, p. 723. The occupation of the strip will be described later. It is sufficient to say now that several feet north of the macadamized roadway, and four or five feet below it, is a dirt road used in the summer time. On July 8, 1893, the county commissioners, in consideration of $200, granted permission to the telegraph company to construct and maintain its line of poles and wires along the pike between the west line of Sandusky county and the city of Fremont, "said line of poles to be erected between the pike and dirt road." In pursuance of this authority, the telegraph company constructed its line along the north edge of the macadamized roadway, and still maintains it there. The line consists of poles and cross-arms carrying 13 wires, a number of which are used as through wires for the transmission of interstate and government messages. In April, 1899, the county commissioners granted to the Toledo, Fremont & Norwalk Railway Company the right to construct, maintain, and operate an electric railway upon and along the southern portion of the macadamized roadway. This railroad was built and is now in active operation.

The turnpike (meaning the 120-foot strip) is now occupied as follows: Along the extreme south side is the line of the American Telegraph & Telephone Company, carrying 51 wires. Next north is a deep ditch. Then comes the macadamized roadway, occupied in its southern part

by the electric railway, with its poles, wires, ties, and rails. North of this is the portion of the macadamized roadway open to the public, being from 16 to 20 feet wide. Then, on the north edge of this are the poles and wires of the appellee. The rest of the turnpike, about 50 feet wide, is unoccupied, except by the dirt road, and a part of the way by a local telegraph and telephone line bearing two wires, which is on the extreme north part. There was testimony tending to show that the traffic on this highway has largely increased since 1893, when the county commissioners authorized the telegraph company to erect its line between the pike and the dirt road. The electric railway is in active operation. Its cars run frequently from early in the morning until after midnight, and sometimes at a high rate of speed. Many automobiles use the pike. In addition to hay and farm wagons, the development of the oil business has led to the use of heavy wagons for transporting machinery and supplies.

The weight of the testimony was to the effect that it is impracticable for heavily loaded wagons to pass one another or be passed by ordinary vehicles on the macadamized roadway between the electric line and the poles of the appellee. Accordingly, the descent from the macadamized pike to the dirt road has been graded in places so as to permit vehicles to pass from one road to the other. There was testimony tending to show that because of the existing conditions the use of the pike by vehicles is not only inconvenient, but in places dangerous. It was in view of this that the county commissioners, after vainly attempting to persuade the telegraph company to remove its poles to the north side of the turnpike, so as to permit the widening of the macadamized roadway, passed the resolution of September 26, 1903, which, after reciting the finding of the board, that "the present location of said line of telegraph poles upon said highway seriously incommodes the public in the use of said highway," ordered the poles to be moved "from the place where they are at present located," and granted authority to the telegraph company "to locate said line of poles, etc., upon the extreme north portion of said Maumee Pike," etc.

The primary purpose of a highway being for travel and transportation, its use by a telegraph company to facilitate communication is subordinate to its use by the public for the primary purpose. Railway Co. v. Telegraph Assn., 48 Ohio St. 390, 27 N. E. 890; Lewis on Eminent Domain, § 131; Hudson River Telephone Co. v. Turnpike & Ry. Co., 135 N. Y. 393, 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838. This principle is recognized in the statutes of Ohio regulating the use of public roads by telegraph companies. Section 3454, Bates' Ann. St., grants to telegraph companies the right to construct telegraph lines upon public roads, with this proviso: "But the same shall not incommode the public in the use of such roads." So section 3461-1, which contains a similar grant of authority, contains this limitation: "Provided, that the same shall not in any instance be so constructed as to incommode the public in the use of said roads or highways." The county commissioners, having been given the custody and control of this pike by the state, and, in view of the existing conditions, being of the opinion that the location of the telegraph line near the middle of the

pike seriously incommodes the public in the use of it, were only doing their duty when they took steps to require the removal of the poles and wires to the north side of the pike.    This is true, unless, for some of the reasons urged by the telegraph company, the usual rule does not apply here.    Let us briefly examine the points made.

This being a post road and the telegraph company having complied with the provisions of section 5268 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3581], it is insisted it has a right, under section 5263 [U. S. Comp. St. 1901, p. 3579], to maintain its telegraph line where it is, by virtue of the authority conferred by that section.    It may be noted that while the section does grant to certain telegraph companies the right to construct and maintain their lines on the military or post roads of the United States, it contains the express provision that such lines shall be so maintained as not to "interfere with the ordinary travel on such  *  *  *  roads." But, passing this, it is established by numerous decisions that the statute is permissive merely.    It was not intended by its passage to interfere with the proper control and regulation of such highways by the states, counties, or municipalities, which had them in charge.    Mich. Telegraph Co. v. City of Charlotte (C. C.) 93 Fed. 11, 14; City of Toledo v. Western Telegraph Co., 107 Fed. 10, 13, 46 C. C. A. 111, 52 L. R. A. 730; Western Union Tel. Co. v. Mass., 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; City of St. Louis v. Western Union Tel. Co., 148 U. S. 100, 13 Sup. Ct. 485, 37 L. Ed. 380; Richmond v. Southern Bell Telephone Co., 174 U. S. 761, 772, 19 Sup. Ct. 778, 43 L. Ed. 1162.

But it is contended that, apart from the federal post road statute, the erection of the telegraph line, under authority granted by the commissioners for a consideration, vested in the appellee a right to maintain its poles and wires where they are indefinitely, and that it cannot be deprived of this right, which is a valuable one, but by due process of law.    It is enough to say in reply to this, that the county commissioners had no power to grant such a right or franchise.    Their power was limited.    They had a right to permit the telegraph company to maintain its poles and wires in the road, provided they should not incommode the public in its use, but that was the extent of their power; and whether the public is at any time so incommoded is a question to be determined according to the conditions existing at the time. A location not inconvenient when made, may become so because of changed conditions; and whether it has or not, must be ascertained by the commissioners in office when the inquiry is made.    No board has power to determine for all time just how a highway shall be used. The use may be changed as the new conditions demand.    Elster v. Springfield, 49.Ohio St. 82, 97, 30 N. E. 274; Daily v. State, 51 Ohio St. 348, 356, 37 N. E. 710, 24 L. R. A. 724, 46 Am. St. Rep. 578; Railroad Co. v. Defiance, 52 Ohio St. 262, 40 N. E. 89; Wabash R. R. Co. v. Defiance, 167 U. S. 88, 97, 17 Sup. Ct. 748, 42 L. Ed. 87; Zanesville v. Fannan, 53 Ohio St. 605, 42 N. E. 703, 53 Am. St. Rep. 664; Railroad Co. v. Elyria, 69 Ohio St. 415, 432, 69 N. E. 738; Chicago, etc., R. R. Co. v. Nebraska, 170 U. S. 57, 75, 18 Sup. Ct. 513, 42 L. Ed. 948; American Rapid Telegraph Co. v. Hess, 125 N. Y. 641, 646, 26 N. E. 919, 13 L.

R. A. 454, 21 Am. St. Rep. 764; C. B. & Q. R. R. Co. v. Quincy, 136 Ill. 563, 571, 27 N. E. 192, 29 Am. St. Rep. 334.

It is also urged that it is impracticable to move the line of poles and wires of the appellee to the north side of the pike because of the trees there. The testimony conflicts as to the number of trees on the north side and the extent to which they will interfere with the construction and operation of the line. The weight seems to point to the conclusion that there are more trees on the south than on the north side of the pike. At any rate, this was a matter for the judgment of the commissioners. Having determined that the line in its present location seriously incommodes the public in the use of the pike, it was necessary, if the line were to be permitted to remain in the pike, to select another location. There is nothing in the record tending to show there was any abuse of discretion in the selection of the north side. Mich. Tel. Co. v. Charlotte (C. C.) 93 Fed. 11, 15; Louisville Home Tel. Co. v. Cumberland Tel. Co., 111 Fed. 663, 668, 49 C. C. A. 524; Railroad Co. v. Defiance, 52 Ohio St. 262, 318, 40 N. E. 89; A. T. & T. Telephone Co. v. Mill Creek Tp., 195 Pa. 643, 46 Atl. 140; Telegraph & Tel. Co. v. Township, 23 Pa. Super. Ct. 437.

It is submitted that the location of the electric railway, and not that of the telegraph line, is the cause of the trouble. It is said that the telegraph line was there before the electric railway, and there was plenty of room on the pike then for vehicles. This is but another phase of the argument that the telegraph company got a perpetual right to maintain its poles in the pike. It never did get such a right. The commissioners retained the power to regulate the use of the highway by quasi public corporations and might have required the appellees to remove its poles to the north side of the pike when it gave the electric railway company the right to build its road along or near the south side.

Finally, what was said with respect to the discretion of the county commissioners as to the future location of the poles, applies equally to their removal. The whole matter was within the reasonable control of the commissioners, and there is nothing in the record to justify the concluson that they acted in a capricious or arbitrary manner or were guilty of an abuse of the discretion entrusted to them.

The judgment of the court is reversed, and the case remanded, with directions to dismiss the bill, and grant the prayer of the cross-bill.