TAYLOR *v.* THE CITY OF TOLEDO ET AL.

*Municipal corporations—License to operate motor bus—Revocation not taking property without due process—Exclusion of busses from streets after licenses granted—Ordinance to regulate and control motor busses—Director of public safety may establish routes, etc., when—Constitutional law.*

1. The holder of a license, for which he has paid the fee fixed by ordinance, entitling him to operate a motor bus in a city for a fixed period, carrying passengers for hire, does not have such a vested right as to make a revocation of the license by the city a taking of property without due process of law.

2. A city in the exercise of a sound discretion may by a uniform general order exclude motor busses transporting passengers for hire from operating on the streets of a limited congested area, even though the licenses which have been issued authorize the licensees to operate on such streets.

3. Where a general city ordinance for the regulation and control of motor busses authorizes the director of public safety,

in considering applications for licenses, to exclude bus serv-
ice from certain streets, in his discretion, and requires the
licensee to comply with all regulations with respect to routes
as the same may be reasonably established from time to
time by the director of public safety, such officer has au-
thority by a general and uniform order and in the exercise
of a reasonable discretion to exclude busses from specified
streets in a limited congested area, even though the licenses
authorized the operation of such busses on those streets.

(Decided February 9, 1922.)

Appeal: Court of Appeals for Lucas county.

*Messrs. Denman, Kirkbride, Wilson & McCabe*
and *Mr. Milton C. Boesel,* for plaintiff.

*Mr. Frank M. Dotson,* director of law, and *Mr.
Martin S. Dodd,* assistant director of law, for de-
fendants.

Richards, J.    This action was commenced for the
purpose of enjoining the city of Toledo and various
officials of the city from enforcing an order made
by the director of public safety, excluding motor
busses operated for hire from the use of certain
streets in a limited and congested business district
of the city.    The order was made by the director of
public safety on January 10, 1922, and became effec-
tive on January 15.

On March 14, 1921, the city duly adopted an ordi-
nance relating to motor busses, providing for the
licensing of the same, establishing certain sums to
be paid by the various licensees, based on the ca-
pacity of their busses for carrying passengers, and
providing for the regulation and control of the same.
The plaintiff, on his application therefor, received
a license from the city under this ordinance and

paid the fee fixed in the ordinance, and his license will not expire until July, 1922. The ordinance provides that no one shall operate a motor bus in the city for hire until he has received a license under this ordinance and the license must designate, among other things, the route on which he is permitted to operate. In compliance with the terms of the ordinance, the license issued to the plaintiff designates the route over which he is licensed to operate, and that route includes a portion of the downtown business district, from which, by the order of the director of public safety, made on January 10, busses are excluded.

The plaintiff contends that the order made by the director of public safety deprives him of property without due process of law, that the order is unreasonable, and that the director of public safety had no power to issue the same.

The briefs of counsel are devoted to a discussion of these three claims asserted by the plaintiff, but the plaintiff relies chiefly on the one last stated. Indeed, a long line of decisions has established the principle that a license like that held by the plaintiff does not give the licensee such vested right in the use of the streets of a municipality that a termination of the right by the city would amount to taking property from him without due process of law. Neither does the contention of the plaintiff that the order is unreasonable merit very serious consideration in view of the evidence which has been introduced bearing upon the congestion of traffic in the area from which motor busses operated for hire are excluded. That limited area from which such busses are excluded by the terms of the order embraces the district lying within the lines of Wash-

ington, Erie and Cherry streets and the Maumee river, and it is the chief retail district of the city and unquestionably the most congested district in the city.

If the plaintiff relied on the unreasonableness of the order made by the director of public safety, the burden rested upon him to establish the fact that it was unreasonable, which fact he utterly failed to establish. On the contrary, the evidence offered on behalf of the city proves beyond all question that the restricted area is highly congested and that the operation of the busses adds very materially to the congestion.

It appears that some ninety motor busses, which operate for hire, are licensed by the city, and that on a week day more than seven hundred trips are made by these busses along Superior street, in the excluded district, and more than five hundred trips made per day on Summit street in that district, and the evidence shows that in the operation of these busses, when they stop to unload or load passengers, a long line of traffic is frequently obstructed and delayed; and it is apparent from the evidence that the incidents of traffic, including the loading and unloading of passengers, tend to bring these busses into this district in groups, so that when the front bus has completed its loading and unloading of passengers and proceeds on its route those busses in the rear are frequently not yet ready to proceed and they consequently still further delay and obstruct the traffic. The whole evidence leaves the impression on the court that there has been an increasing congestion of traffic and a materially greater difficulty in getting across the streets in that portion of the city. Among numerous authorities which con-

sider the rights of licensees and establish the plenary right of the city to regulate and control its streets, in the respects involved in this case, we cite the following: *Huston* v. *City of Des Moines*, 176 Iowa, 455; *State, ex rel. Schafer*, v. *City of Spokane*, 109 Wash., 360; *Ex parte Dickey*, 76 W. Va., 576, L. R. A., 1915F, 840; *Burgess* v. *Mayor and Aldermen of Brockton*, 235 Mass., 95; *Ganz et al., County Commrs.*, v. *Ohio Postal Telegraph Cable Co.*, 72 C. C. A., 186, and *Raabe* v. *State of Ohio*, 7 Ohio App., 119.

If the order of the director of public safety was made wholly or in part with the view of furthering the safety of pedestrians in crossing the streets, it certainly is commendable. More than twenty-five years ago, in the case of *Cincinnati Street Ry. Co.* v. *Snell*, 54 Ohio St., 197, the Supreme Court of Ohio, in speaking through Spear, J., of the rights of foot travelers upon the public streets, used the following language at page 204:

"Ancient rights have not changed because new vehicles of travel have been introduced upon the streets, nor because a portion of the people who ride, being in haste to reach their destination, demand rapid transit. The streets remain for all the people, and he who goes afoot has the right, especially at a crossing, to walk to his destination; he should not be compelled to run or to dodge and scramble, to avoid collision with vehicles.  *  *  *  Life and limb are of more consequence than quick transit. The vehicle man must not run down the pedestrian."

To be sure, most people who have occasion to cross the streets do get across safely, but it is owing chiefly to their superior skill in dodging vehicles and to the aid of efficient traffic officers. During the

quarter of a century which has elapsed since the supreme court noted the dangers to pedestrians the evils of which it then complained have increased many fold.

The court has no difficulty in reaching the conclusions that the plaintiff has not been deprived of property without due process of law and that the order of the director of public safety is not unreasonable, and the court is unanimous in these conclusions.

Plaintiff insists further that the director of public safety had no power to issue the order of which complaint is made. The authority of the director of public safety depends upon a construction of the ordinance already cited, and particularly the concluding part of the third section of that ordinance. The validity of the ordinance has already been sustained by this court in the case of *Powelsland* v. *City of Toledo, ante,* 198. The ordinance provides that applications for licenses to operate motor busses for hire shall be filed with the department of finance, and referred at once to the director of public safety, who shall investigate and report his approval or disapproval of the same to the department of finance. The third section of the ordinance concludes as follows:

"In considering said applications the Director of Public Safety may exclude bus service, as defined in this ordinance, from certain streets or parts of streets, for safety, sanitary or other reasons involving the public welfare. The applicant shall have the privilege, if he so desires, of amending, modifying or altering his application so as to comply with the reasonable suggestions or require-

ments of the Director of Public Safety, who shall have the power to approve the same in such amended, modified or altered form.

"It shall be unlawful for any person, partnership or corporation licensed under the provision of this ordinance, to operate any bus or busses in the City of Toledo on any route other than the route provided for in said license; and it shall be unlawful for any such licensee to fail or refuse to operate such bus or busses over the whole of said route in the manner and in the places therein specified, or to neglect or refuse to comply with any and all regulations with respect to routes as the same may be reasonably established from time to time by the Director of Public Safety, under the authority of this ordinance."

It appears from the language above quoted that the director of public safety has full power to establish routes and to exclude bus service from certain streets or parts of streets in the interest of the public welfare, that the regulation and control of busses operated for hire is imposed upon that official, and that the ordinance gives to the director of public safety the power to require licensees to comply with the rules and regulations respecting routes as they may be reasonably established from time to time by the director of public safety.

A majority of the court are of opinion that this language is ample to invest the director of public safety, in the exercise of a reasonable discretion, with power to issue and promulgate general and uniform orders such as the one involved in the case at bar. In ascertaining the power and authority of the director of public safety, the whole ordinance must be construed together, and, so construed, the

ordinance is a manifest attempt on the part of the city council to cover the whole field of operating motor busses for hire, of licensing and regulating persons operating the same, and of establishing and altering routes.

*Judgment and decree for defendants.*

KINKADE, J., concurs.

CHITTENDEN, J., dissenting. I am in entire accord with the majority of the court in their finding that the order issued by the director of public safety violates no constitutional provisions, and I am also fully in accord with the finding that the evidence wholly fails to show the order to be unreasonable.

I am unable, however, to agree with the finding that the director of public safety has had conferred upon him the power to make the order of January 10. The only authority to issue that order must be found in Section 3 of the ordinance regulating the operation of motor busses. That section is found to be divided into three paragraphs, the first of which provides for making application to the department of finance for a license, which application is to be accompanied by maps of the proposed route, together with other data affecting the operation of the bus. The second paragraph provides for the submission of the application to the director of public safety for his approval or disapproval. It further provides that the director of public safety, in considering such application, may exclude bus service from certain streets or parts of streets for safety, sanitary or other reasons involving the public welfare. The privilege is then given the applicant

to amend or alter his application so as to comply
with the requirements of the director of public safe-
ty, who then has power given him to approve the
amended or modified application. The third par-
agraph establishes certain regulations as to routes,
governing the licensee in the operation of his bus.
These regulations were evidently suggested by pre-
vious experience of the city with busses operated
on its streets. The first regulation limits the oper-
ation of the bus to the route provided for in the
license, and makes it unlawful to operate the bus
upon any other route. The next regulation requires
the bus or busses to operate over the whole of the
route; and it appears that council, believing that
experience might suggest other regulations with re-
spect to the routes, provided that it would be unlaw-
ful not to comply with any or all regulations with
respect to routes, as the same might be reasonably
established from time to time by the director of pub-
lic safety. In other words, power was conferred
upon the director of public safety to establish from
time to time regulations concerning routes, in addi-
tion to the two specific regulations established by the
ordinance itself. I cannot read this section as au-
thorizing the director of public safety to change
the routes. My view in this respect is strengthened
from a consideration of the provisions of the ordi-
nance for an appeal from the action of the director
of finance in refusing to grant a license upon a pro-
posed route, or from the action of the director of
finance in revoking a license theretofore granted.

Provision is made in Section 10 of the ordinance
for an appeal by the applicant in case of the refusal
of a license, and by the licensee in case of a revoca-
tion of a license after it has been granted. If Sec-

tion 3 shall be construed as conferring power upon the director of public safety to change routes, it does so without giving any right of appeal on the part of the operator of the bus, a right which is fully provided for by the ordinance in case of refusal to grant a license upon a route described in the application, or in case of revocation of a license that has been granted. It may be that the director of public safety should have the power to alter or change routes after the issuing of a license. If so, that power should be provided for by proper legislation.

For the reason only that I am unable to find that the director of public safety has authority to make the order of January 10, I do not concur in the judgment of the court.